[No. B146634. Second Dist., Div. Four. Nov. 20, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
TITUS GRAVES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV of Discussion.

COUNSEL

H. Clay Jacke II for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Acting Chief Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, Robert F. Katz and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

EPSTEIN, J.—Appellant Titus Graves claims he was entrapped by government authorities during the period between his sentencing in state court following a guilty plea and the date set for his surrender. This "sentence entrapment," he claims, resulted in his probation violation. For that reason, he seeks to set aside the guilty plea and have the sentence vacated. In the published portion of this opinion, we find no entrapment under these facts. In the unpublished portion of our opinion, we find no error in the trial court's nunc pro tunc sentence correction, but we modify appellant's sentence to reflect proper credit for time served. As modified, we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

In August 1997, appellant and Charles Coley were charged with 17 counts of theft and related crimes involving the fraudulent use of credit cards to purchase airline tickets. The crimes were alleged to have occurred between August 25, 1992, and November 10, 1994.

On March 1, 1999, appellant entered a guilty plea to count 1, grand theft (Pen. Code, § 487, subd. (a)),[1] admitting that he fraudulently obtained credit card numbers and gave them to Charles Coley, who unlawfully wrote United Airlines tickets using those numbers and provided appellant with the stolen tickets, which appellant then sold. He admitted the enhancement allegation that the amount of the grand theft exceeded $150,000. (§ 12022.6, subd. (b).) Appellant also entered a guilty plea to count 2, conspiracy to commit grand theft (§ 182, subd. (a)(1)); count 14, excess acquisition of credit cards (§ 484e, subd. (d)); and counts 16 and 17, receiving stolen property (§ 496, subd. (a)).[2]

The understanding at the time of this plea was that appellant would be placed on formal probation on condition that he serve the first 365 days in

[1]All statutory references are to the Penal Code unless otherwise indicated.
[2]The remaining counts against appellant were to be dismissed pursuant to plea negotiations.

county jail. He was expressly warned that if he violated probation, he could be sentenced to up to seven years in state prison. Sentencing was set for May 3, and appellant was released on his own recognizance.

Sentencing was continued several times, and on August 31, 1999, appellant's guilty plea was set aside and the cause reset for preliminary hearing.

On October 8, 1999, appellant again entered a guilty plea on the same terms as the plea he had entered in March. He was again informed of the maximum possible term he could receive if he violated any terms or conditions of his probation. He was expressly warned: "If you violate any of the terms and conditions of your probation, you could be brought back to the sentencing court and at that time, sentenced up to seven years in state prison." The court accepted the guilty plea. Appellant, through counsel, expressed no objection to immediate sentencing, but asked for "one last continuation" of the date for his surrender.

The court proceeded to sentence appellant to five years' probation on count 1, with the first 365 days in county jail. A restitution fine of $200 was imposed and stayed while appellant paid restitution to United Airlines in the amount of $134,000. Appellant was given credit of 93 days for time served. Conditions of probation included: "Obey all laws, orders, rules and regulations of the probation department and the court." Appellant stated he understood and accepted the terms and conditions of probation. Appellant's surrender date was stayed until December 7, 1999.

In September and October 1999, while this case was pending, appellant also was the subject of a federal investigation for similar offenses. John Koleno, a special agent with the United States Secret Service, was the lead investigator in a federal prosecution of appellant for purchasing airline tickets with fraudulently obtained credit cards and selling those tickets for cash.

On September 17, 1999, Agent Koleno spoke with a Citibank investigator regarding unauthorized use of a credit card to purchase two electronic airline tickets on September 2, 1999. Koleno located the person who traveled on the tickets, Reggie Cooks.[3] Cooks told Koleno that on August 31, 1999, he visited a travel agency to purchase airline tickets. He was approached outside the agency by a man who offered to sell him discounted tickets. The man told him to call a certain telephone number and speak to "T" to purchase the tickets.

Cooks made the call and spoke to "T," later identified as appellant. They discussed the price of tickets and arranged to meet. At the meeting, Cooks

---

[3]Cooks also used the name Raymond Hooks.

gave appellant $50 in cash. He called appellant two hours later and was given a confirmation number for the flight. The next day, Cooks and a companion traveled on that flight. Cooks later changed a segment of the flight with appellant, and flew part of the way on Southwest Airlines. Koleno verified that two Southwest Airlines electronic tickets had been purchased in Cooks's name on September 6, 1999, using a different unauthorized Citibank credit card. Three other unauthorized purchases of airline tickets were made with the same credit card.

On September 29, 1999, at Agent Koleno's direction, Cooks telephoned appellant and discussed the purchase of additional tickets. This call and others made under Koleno's direction were recorded and monitored. Cooks and a female undercover agent, operating under the name Kathy Lite, met with appellant that day regarding the purchase of airline tickets to Hawaii. Appellant told them the price for two tickets would be $600. The undercover agent gave appellant a piece of paper with the names Raymond Hooks and Kathy Lite, with a departure date of October 4, 1999, and a return date of October 11, 1999. Cooks gave appellant $600 in cash. Appellant told Cooks to call him for the confirmation number for the flight.

The following day, Cooks telephoned appellant, who stated he had made the airline reservation and gave Cooks a Hawaiian Airlines confirmation number. On October 1, 1999, the Hawaiian Airlines tickets were confirmed for $780 with an American Express credit card number; the cardholder had not purchased or authorized the purchase of these tickets.

The undercover agent met with appellant on October 1, 1999 and arranged for the purchase of two additional tickets from Los Angeles to Hawaii. She gave appellant $600 and the following day appellant gave her a confirmation number for the electronic tickets. The tickets were purchased with an American Express card; the cardholder did not purchase or authorize anyone to purchase the tickets.

On October 11, 1999, at Koleno's direction, Cooks placed a telephone call to appellant. He told appellant that he and his girlfriend were in Hawaii, and when they tried to get on the Hawaiian Airlines return flight appellant had booked for them, they were told their tickets had been canceled because they had been purchased with a stolen credit card. Cooks asked appellant to help them get out of Hawaii. Appellant told Cooks he would take care of it and get him out of Hawaii that day. Appellant instructed Cooks to call back for a confirmation number. Cooks called back, and appellant gave him a confirmation number for an ATA flight from Hawaii to Los Angeles leaving that day. Koleno ascertained that the reservation had been confirmed with an unauthorized American Express card.

Just after this last incident, appellant was arrested pursuant to a federal warrant and charged with use of an unauthorized access device and attempted use of an unauthorized access device. He was ultimately convicted by jury on the federal charges.

On December 7, 1999, the date set for appellant to surrender to the court to commence serving his time in county jail on his state conviction, he was in custody on the federal charges. Appellant did not appear to surrender. A formal probation revocation hearing was held in September 2000. After an evidentiary hearing, the court found appellant in violation of probation. He was sentenced to state prison for five years on count 1, and was ordered to pay restitution of $134,000. He was sentenced to concurrent sentences of eight months each on counts 2, 14, 16 and 17. His sentence was ordered to run consecutively to the time being served in federal custody. He appeals from this order.

## DISCUSSION

### I

 Appellant claims he should have been allowed to withdraw his guilty plea after judgment because the prosecutor, in cooperation with federal agents, concealed or misrepresented the consequences of the plea. Specifically, he claims he "was not advised that the district attorney and federal agents planned to set him up for a subsequent probation violation and then ask for more time in prison. The district attorney took the plea in bad faith, never intending that Appellant's sentence would be a maximum of one year in the county jail."

The record does not support this argument. Appellant entered his guilty plea on October 8, 1999. The court then asked whether appellant wished to be sentenced at that time. The court also inquired when appellant would be able to walk without crutches.

Defense counsel replied, "What he is asking for, we have no objection to sentencing today. If the court would allow him to come back—he is asking for 60 days, but with an understanding if he fails to show up, this would become an open plea and the court could sentence him to the maximum amount. I have explained that to him. He assured me he intends to surrender. He is just asking for one last continuation of his surrender."

After some further colloquy about whether appellant would have money for restitution if his surrender were continued, the court stated, "I don't mind putting it over for him to report. He is better off not having crutches when he

reports to the county jail, but I would rather sentence him today."[4] Defense counsel agreed to this. The court proceeded to sentence appellant, setting his surrender date for December 7.

Nothing in this exchange indicates that the prosecutor had any part in appellant's request to delay his surrender date, or knew in advance of taking the plea that appellant intended to request a delay. Thus, there is no support for appellant's argument that the prosecutor took the plea with knowledge that there would be a period between sentencing and surrender during which appellant could potentially be "set up" for a probation violation.

There is a more fundamental flaw in appellant's argument. Despite his assertions both at the probation revocation hearing and on appeal, the fact that appellant was under federal investigation at the time he entered his plea in state court did not make it "abundantly clear" to the prosecutor that appellant would violate his probation. Even if the prosecutor knew appellant would request and be given a delay of his surrender date, and even if he knew the federal agents intended to provide appellant with another opportunity to commit an illegal act, the prosecutor could not have known with certainty that appellant would take that opportunity and therefore violate his probation. There is no basis for appellant's claim that he was misled by the prosecutor about the consequences of his plea.

Appellant argues that the October 11 incident constituted a form of entrapment. ■ The test of traditional entrapment is whether the conduct of the law enforcement agent was "likely to induce a normally law-abiding person to commit the offense[.] For the purposes of this test, we presume that such a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690 [153 Cal.Rptr. 459, 591 P.2d 947]; *People v. Watson* (2000) 22 Cal.4th 220, 223 [91 Cal.Rptr.2d 822, 990 P.2d 1031].)

■ The facts in this case do not establish entrapment. According to Agent Koleno, on October 11, Reggie Cooks telephoned appellant and told

---

[4]According to Agent Koleno's affidavit in support of the arrest warrant, on October 8, 1999, a federal agent observed appellant park his car at the Los Angeles County Courthouse, remove a pair of crutches from the trunk of the car, and walk unassisted to the courthouse entrance. Only after entering the courthouse did appellant begin to use the crutches as if he were disabled. This affidavit was before the trial court at the probation revocation hearing, and supports the inference that appellant appeared disabled in order to secure a delay of his surrender date.

him he and his girlfriend were stuck in Hawaii because the airline tickets supplied by appellant had been rejected because they had been purchased with a stolen credit card. Cooks said, "Look, we can't get out of Hawaii. You have got to do something."

A normally law-abiding person would not be induced by this telephone call to purchase more airline tickets with a stolen credit card in order to help the caller. Cooks's telephone call provided appellant with nothing more than an opportunity to act unlawfully. Cooks did not ask appellant to do anything illegal, he only asked appellant to get him new airline tickets. There were lawful responses to that request. Appellant could have assisted Cooks by purchasing tickets with his own credit card or with cash, or he could have declined to help Cooks. Instead he chose to repeat the unlawful acts which had formed the basis for his prosecution and conviction by guilty plea in state court. This choice was made freely just three days after appellant had been sentenced and placed on five years of formal probation, with conditions that he obey all laws and that he not have any credit cards or credit card numbers in his possession except those issued in his name. It was not the result of overbearing police conduct, and does not constitute entrapment.

Appellant admits the defense of entrapment does not literally apply, but claims the government conduct constituted "sentence entrapment," and asks that we ban such practice. He relies on *U.S. v. Parilla* (9th Cir. 1997) 114 F.3d 124. In that case, the defendant sold cocaine to a government informant on two occasions. The government then gave the informant a handgun to trade with the defendant for more cocaine, and the defendant agreed to that trade. The defendant pled guilty to two counts of distribution of cocaine. At sentencing, the government recommended a two-level sentence enhancement for possession of a gun during a drug-trafficking crime. The defendant argued he had been entrapped into possessing the gun, or that the enhancement should be offset with a downward departure from the sentencing guidelines for sentencing entrapment. The trial court rejected both arguments.

The Ninth Circuit Court of Appeals held that if the defendant had been entrapped into trading cocaine for a gun, then the doctrine of sentence enhancement precludes application of the two-level gun enhancement under the sentencing guidelines. "Our holding rests upon the basic principle that a defendant's sentence should reflect 'his predisposition, his capacity to commit the crime on his own, and the extent of his culpability.' [Citation.]" (*U.S. v. Parilla, supra,* 114 F.3d at p. 127.) The court vacated the defendant's sentence and remanded for determination as to whether the defendant had been entrapped into committing a greater offense than the one he was predisposed to commit. (*Id.* at p. 128.)

The decision in *Parilla* relies in part on *U.S. v. Staufer* (9th Cir. 1994) 38 F.3d 1103. In *Staufer*, the court held the defendant was entitled to a downward departure from the sentencing guidelines where he was initially only willing to sell a small amount of LSD to an undercover agent, but was pressured by the agent to sell a larger amount. The court noted that the sentencing commission, in its amended guidelines (adopted after the defendant's sentencing) recognized "that law enforcement agents should not be allowed to structure sting operations in such a way as to maximize the sentences imposed on defendants, and that courts may take into consideration the predisposition and capacity of the defendant to engage in a deal of the magnitude for which he or she was convicted." (*Id.* at p. 1107.)

We decline to apply the doctrine of sentence entrapment to this case for two reasons. ▄▄ First, California courts do not follow the same rigid sentencing guidelines as federal courts, so the need for a specific basis for departure from a guideline is not present. But more important, appellant in this case was not pressured to commit a greater crime than the one he was predisposed to commit.[5] In fact, he was not pressured into committing a crime at all. He was asked to help the government agent acquire new airline tickets, with no pressure or suggestion that he do so unlawfully. He made the choice to use an unauthorized credit card for the purchase. Assuming for sake of argument that sentence entrapment is cognizable in California state courts, it is not present here.

## II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to reflect 93 days of presentence credit; in all other respects, the judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 2002.

---

[5]In California, the test for entrapment does not focus on the subjective predisposition of the particular defendant; instead, it focuses on the police conduct and is objective. (*People v. Barraza, supra,* 23 Cal.3d at pp. 690-691.)

*See footnote, *ante,* page 1171.