2003 OK CR 4

**Jerald C. LEECH, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–2001–754.

Court of Criminal Appeals of Oklahoma.

Feb. 18, 2003.

As Corrected March 21, 2003.

Charles Holdstock, Oklahoma City, OK, Attorney for Defendant at trial.

Bryan Slabotsky, Assistant District Attorney, Enid, OK, Attorney for the State at trial.

Mary S. Bruehl, Appellate Defense Counsel, Norman, OK, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Brant M. Elmore, Assistant

Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## OPINION

LILE, Vice Presiding Judge:

¶1 Jerald C. Leech, Jr., was convicted at jury trial of Trafficking in a Controlled Dangerous Substance (Methamphetamine) in violation of 63 O.S. Supp.1999, § 2–415 in Case No. CF–2000–304 in the District Court of Garfield County. The Honorable Ronald G. Franklin, District Judge, sentenced Leech to Twenty (20) years imprisonment and a Fine of $100,000 in accordance with the jury verdict. Appellant has perfected his appeal to this Court.

¶2 The uncontradicted evidence established that Leech and the State's informant, Peterman, had an ongoing relationship. Leech would supply Peterman with cash to purchase supplies for manufacturing methamphetamine and receive drugs in payment. Leech would also sell methamphetamine for Peterman. On June 14, 2000, Peterman gave Leech approximately an ounce of methamphetamine, half as repayment for the most recent cash advance and half for sale on consignment. An immediate arrest was made and the drugs were recovered from Leech's car. An additional small amount of methamphetamine was recovered from Leech's pocket.

¶3 Leech first claims that the evidence was insufficient to support the trafficking conviction because there was no proof that he knowingly possessed twenty or more grams of methamphetamine. The well established standard for analyzing insufficiency of evidence claims is set forth in *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202. We review the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The State's evidence was that Peterman and Leech discussed the amount and purpose of the methamphetamine delivered to Leech immediately prior to Leech taking possession. This evidence was accepted by the jury and is sufficient under *Spuehler*. We will not disturb a jury verdict without

legal justification. *Torres v. State*, 1998 OK CR 40, ¶38, 962 P.2d 3, 16, cert. denied, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999).

¶4 Leech further claims that the trial judge should have given a lesser included offense instruction covering possession of methamphetamine. The record is silent as to any objections to the court's instructions and as to any defense requested instructions. Appellant has a duty to provide a sufficient record for review. *Hill v. State*, 1995 OK CR 28, ¶10, 898 P.2d 155, 160. We must assume that the lack of a lesser included instruction is raised for the first time on appeal. Under these circumstances, we review for plain error only. *Simpson v. State*, 1994 OK CR 40, ¶23, 876 P.2d 690, 698–99. We find none. An underlying requirement of *Shrum v. State*, 1999 OK CR 41, ¶10, 991 P.2d 1032, 1036, is that a lesser offense instruction should not be given unless the evidence would support a conviction for the lesser offense. The uncontradicted evidence in this case is that Appellant knowingly possessed a trafficking quantity and not a quantity for personal use. Even if requested at trial, the lesser offense instruction would properly have been refused. *Hill v. State*, 1988 OK CR 251, ¶11, 764 P.2d 210, 213.

¶5 The more interesting issue, that was not raised at trial but which is presented on appeal, is also an issue of first impression for this Court. As above, we review for plain error only. *Simpson*, 876 P.2d at 698–99. Leech claims that he was entrapped into possessing a trafficking quantity of methamphetamine and asserts that he could only be convicted of possession of methamphetamine, a lesser offense.

¶6 It is undisputed, in this reverse sting operation, that law enforcement agents determined the quantity of methamphetamine to be offered to Leech.

¶7 Sentencing entrapment is said to occur when the State causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense. This differs from traditional entrapment situations where an otherwise innocent person is caused to commit a crime. Traditional en-

trapment situations may occur when an unwary innocent person is trapped into committing a crime. *See Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848. The concept of sentence entrapment applies to those situations where one admittedly predisposed to criminal activity is enticed into committing a greater crime of the same general character. If an innocent person is entrapped into committing an illegal possession of any amount of illegal drugs, the traditional entrapment principals and our traditional entrapment instruction found at OUJI–CR 2d 8–25 would apply.

¶ 8 That instruction makes it clear that an entrapped person is one who had "no previous intent or purpose to violate the law;" that was not "willing to commit a crime such as that charged" and that had "no previous intent or purpose to commit any offense of the character here charged."

¶ 9 This language would not apply in the case of asserted sentencing entrapment. The defendant may have intended to "violate the law." The defendant may have intended to commit a crime "such as that charged" if that language means a drug related crime. The defendant may have intended to commit an "offense of the character here charged" if that language means a drug related crime.

¶ 10 In a case where sufficient evidence is presented to raise the issue of sentence entrapment, this language must be modified to make it clear to the jury that the issue is whether or not the defendant, although intending to commit a lesser offense, has been entrapped into committing a greater offense. If the defendant had no previous intent to commit the greater crime or did not become ready and willing to commit a greater crime during the course of the transaction, even though predisposed to commit the lesser crime, then a finding that law enforcement agents committed sentencing entrapment would require that the defendant be found not guilty of the greater crime, and guilty of the lesser offense.

¶ 11 In *Robinson v. State,* 1973 OK CR 152, ¶ 11, 507 P.2d 1296, 1299, overruled on other grounds in *McInturff v. State,* 1976 OK CR 226, 554 P.2d 837, this Court said:

"[O]ne who is instigated, induced, or lured by officer of law or other person, for purpose of prosecution, into commission of crime which he had otherwise no intention of committing may avail himself of defense of entrapment".

We further said that an officer "acting in good faith with view to detecting crime" may make use of deception, trickery or artifice. *Id.*

¶ 12 Those same principals apply where one claims sentencing entrapment. A defendant who intended to possess small amounts of an illegal drug could be entrapped by officers into possessing a trafficking quantity or even a quantity sufficient to support a charge of intent to distribute. In that event, the defendant would be entitled to an instruction on sentencing entrapment to allow the jury to determine whether the defendant was guilty of the greater or lesser charge.

¶ 13 We then turn to the facts of Leech's case to apply these principals. Leech never claimed entrapment, whether in a traditional sense or in the nature of sentencing entrapment. There is no evidence of entrapment in the record. The trial court did not err in failing to instruct on entrapment in the absence of a request. Further, if requested, the instruction would have properly been refused as not being supported by any evidence.

¶ 14 Leech claims that his sentence of twenty (20) years imprisonment is excessive. Leech was fifty-eight years old at the time of sentencing and will be denied access to most good time credits. In a reverse sting operation such as this, it is not unusual to encounter informants who are more blameworthy than the defendant. We find, under all the facts of this case, that the sentence should be modified to ten (10) years imprisonment. *Rea v. State,* 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149. The case is remanded to the trial court for re-sentencing in accordance with this opinion.

**DECISION**

¶ 15 The judgment of the trial court is **AFFIRMED** and the sentence is **MODIFIED** to ten (10) years imprisonment. The

case is **REMANDED** to the trial court for re-sentencing in accordance with this opinion.

LUMPKIN, J., concurs.

JOHNSON, P.J., specially concurs.

LANNING, J., concurs in results.

CHAPEL, J., dissents.

JOHNSON, P.J.: specially concurs.

¶ 1 I wish to specially concur in the fine opinion written by Judge Lile. It is indeed unfortunate that law enforcement would entice someone to commit a crime either unwittingly or even if they know they are committing a crime but yet the crime is greater than one they would have committed otherwise. Because of this opinion, obviously, the Oklahoma Uniform Jury Instruction committee will have to propose one or two additional instructions.

¶ 2 The justice system should look with a jaundiced eye upon reverse sting operations. This effectively is the justice system becoming involved in committing crime and not stopping it.

CHAPEL, J., dissenting:

¶ 1 In Proposition II Leech claims the State engaged in "sentence entrapment" by setting him up with an ounce of methamphetamine, which would automatically warrant a trafficking charge. As the majority notes, sentencing entrapment occurs when the State causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense. Sentencing entrapment is often associated with reverse sting operations where mandatory sentences result from a particular quantity of drugs.[1]

¶ 2 Leech claims the police department's decision to provide him (through the confidential informant, Peterman) with an ounce of methamphetamine, ensuring he would be charged with trafficking, unfairly entrapped him into the more serious charge and longer sentence associated with that crime. A charge for trafficking is dependent solely on the amount of the drug possessed and has significant sentencing implications, including mandatory punishment and loss of Department of Corrections credits while serving the prison sentence.[2]

¶ 3 Although I agree with the majority's adoption of the doctrine of sentencing entrapment, I cannot agree with the majority opinion's analysis of the "entrapment" issue. The majority initially correctly states that sentencing entrapment differs from the traditional defense of entrapment. However, the opinion appears to conflate the two doctrines, viewing sentencing entrapment entirely through the prism of entrapment principles. The opinion suggests that the traditional instruction on entrapment, which does not apply here, should be modified where necessary to reflect factual circumstances underlying sentencing entrapment. Finally, the majority completely fails to apply even this sketchy understanding of sentencing entrapment to the facts of this case. After very briefly discussing the doctrine of sentencing entrapment, the majority even more briefly concludes "[t]here is no evidence of entrapment in the record."[3] The majority concludes without discussion that, had Leech requested an instruction on entrapment it would not have been supported by the evidence. This is neither surprising, since Leech has no entrapment claim, nor relevant, since entrapment and sentencing entrapment are fundamentally different doctrines.

1. *See, e.g., United States v. Kaczmarski*, 939 F.Supp. 1176, 1180 (E.D.Penn.1996), *aff'd by U.S. v. Kaczmarski*, 114 F.3d 1173 (3rd Cir.1997), *cert. denied, Sliwowski v. U.S.*, 522 U.S. 901, 118 S.Ct. 251, 139 L.Ed.2d 179 (1997). There is no credible claim that Leech was entrapped in the traditional sense; it is not entrapment where police furnish a defendant an opportunity to commit a crime. *See, e.g., Cooper v. State*, 1991 OK CR 54, 810 P.2d 1303, 1305.

2. 63 O.S.2001, §§ 2–415(B)(1), (C)4, (D)(1) (first offender subject to not less than twice the term of imprisonment provided in the non-trafficking drug statutes, and the terms of imprisonment not subject to statutory provisions for suspension, deferral or probation, or state correctional institution earned credits other than achievement credits).

3. Op. at 990.

¶ 4 Every state and federal jurisdiction but one, whether or not they recognize the doctrine, defines sentencing entrapment as the claim that a defendant, although predisposed to commit a minor or lesser offense, is entrapped by the State into committing a greater offense subject to greater punishment.[4] The question here is whether a defendant is predisposed to possess or sell the greater quantity of drugs required for trafficking, or merely predisposed to commit a lesser drug offense. The Eighth Circuit described the standard used by the majority of the courts analyzing this issue: "The government's conduct, however, does not have to be outrageous. Rather, the facts should be evaluated by focusing on the defendant's predisposition."[5] The government's conduct is relevant to the extent that the State provides the inducement for the defendant to commit a greater offense.[6]

¶ 5 Several courts have defined and discussed sentencing entrapment before declining to reject or adopt it, ultimately concluding it was not factually supported in particular cases.[7] Hawaii and Pennsylvania, along with the United States District Court for the Eastern District of Pennsylvania, have adopted the doctrine but found it did not apply to the facts before it.[8] The Eighth and Ninth Circuits have adopted sentencing entrapment.[9] The Eleventh Circuit has rejected the sentencing entrapment defense.[10] The D.C. Circuit discussed sentencing entrapment but concluded a defendant predisposed to sell powder cocaine and eager to commit a crime was not entrapped by government agents' insistence that he sell crack cocaine.[11] Congress has also recognized the potential for government misconduct inherent in sting operations. In 1993 Congress modified the federal Sentencing Guidelines to allow for some sentencing relief in reverse sting cases. Where a law enforcement agent sells a drug for a substantially lower price so a defendant will buy significantly more than he would have otherwise, the sentencing court may depart downward from the sentence recommended in the guidelines.[12]

¶ 6 This claim has the most force when made in connection with reverse sting operations and situations where government agents choose to deal in a specific amount of drugs expressly in order to charge a greater

**4.** *United States v. Raven,* 39 F.3d 428, 438 (3rd Cir.1994); *United States v. Jones,* 18 F.3d 1145, 1153 (4th Cir.1994); *United States v. Garcia,* 79 F.3d 74, 75 (7th Cir.1996); *United States v. Okey,* 47 F.3d 238, 240 (7th Cir.1995); *United States v. Searcy,* 233 F.3d 1096, 1099 (8th Cir.2000); *United States v. Staufer,* 38 F.3d 1103, 1106 (9th Cir.1994); *United States v. Sanchez,* 138 F.3d 1410, 1414 (11th Cir.1998), *cert. denied,* 525 U.S. 967, 119 S.Ct. 414, 142 L.Ed.2d 336 (1998); *United States v. Walls,* 70 F.3d 1323, 1329 (D.C.Cir.1995), *cert. denied* 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996); *People v. Graves,* 93 Cal.App.4th 1171, 113 Cal.Rptr.2d 708, 713 (2001); *State v. Yip,* 92 Hawai'i 98, 987 P.2d 996, 1010 (Haw.Ct.App.1999); *State v. Phillips,* 2000 WL 328074 (Iowa App.2000) (unpublished opinion); *People v. Ealy,* 222 Mich.App. 508, 564 N.W.2d 168, 170 (1997); *Commonwealth v. Petzold,* 701 A.2d 1363, 1365 (Pa.Super.1997).

**5.** *Searcy,* 233 F.3d at 1100 (internal quotation omitted).

**6.** *Searcy,* 233 F.3d at 1101.

**7.** *Raven,* 39 F.3d at 438; *Jones,* 18 F.3d at 1154; *Okey,* 47 F.3d at 240 (the Seventh Circuit subsequently specifically rejected the doctrine of sentencing manipulation, see *supra* n. 15, but has neither adopted nor rejected sentencing entrapment); *Graves,* 113 Cal.Rptr.2d at 713; *Ealy* 564 N.W.2d at 170.

**8.** *Yip* 987 P.2d at 1010; *Petzold,* 701 A.2d at 1336–37; *Kaczmarski,* 939 F.Supp. at 1182. The Third Circuit has neither adopted nor banned sentencing entrapment. *See United States v. Scavetti,* 1999 WL 80368 (E.D.Pa.1999) (not for publication).

**9.** *Searcy,* 233 F.3d at 1099; *United States v. Barth,* 990 F.2d 422, 425 (8th Cir.1993); *Staufer,* 38 F.3d at 1108.

**10.** *Sanchez,* 138 F.3d at 1414.

**11.** *Walls,* 70 F.3d at 1329 (the Court also concluded there is no basis for outrageous government conduct to support a downward sentence modification, but this appears to be a separate discussion of the "outrageous government conduct" defense).

**12.** 18 U.S.C.A.USSG FSG § 2D1.1, comment (n. 12, 17) (Nov.1994).

offense.[13] Our criminal justice system allots wide discretion to prosecutors to determine the appropriate charge for any person accused of committing a crime. This discretion is bounded on the one hand by the Legislature's strict definitions of specific crimes, and on the other by a particular defendant's actions. In drug cases, the Legislature has defined certain offenses solely by the weight or amount of drugs possessed, and made sentencing provisions mandatory on the weight or amount alone. Where State agents exert undue influence on a person to commit a crime greater than the one he would normally commit, and where that action determines the defendant's sentence, the prosecutor no longer has any discretion. Instead, the charging decision-making is moved back to the individual drug agent, or even the confidential informant. Law enforcement agents may take a person suspected of past drug dealing and create a specific crime.[14] In this case Peterman approached Leech at a police officer's request, suggested a drug deal, named the amount, and provided the drugs. The officers intended to supply enough methamphetamine to convict Leech of trafficking.

¶ 7 As the Eighth Circuit put it in *United States v. Stavig*, "[W]e continue to be deeply concerned about the proclivity of reverse-sting operations, such as this one, to raise questions of sentencing entrapment. Sentencing entrapment claims arise in this context largely because 'sentencing discretion is delegated all the way down to the individual drug agent operating in the field.'"[15] The Court went on, "Because of the great potential for abuse, these cases require the most

careful scrutiny and a probing examination by the district court."[16] In *United States v. Searcy* the Eighth Circuit continued this theme: "The danger of government abuse is great because in many cases, including this one, the government may influence and, in some cases control, the quantity and kind of a drug involved in the offense."[17]

¶ 8 In *United States v. Staufer*, the Ninth Circuit discussed the concerns raised when government agents convince a defendant to deal in significantly larger quantities of drugs than his previous history would support, and concluded courts must ensure the State "has some reason to believe that defendants are predisposed to engage in a drug deal of the *magnitude* for which they are prosecuted."[18] The Court stated it is unfair and arbitrary to let agents put unwarranted pressure on a defendant to commit a crime which would increase his sentence without regard for his predisposition, his capacity to commit the crime unaided, and the extent of his culpability.[19] "Drug agents can decide, apparently without any supervision by anybody to negotiate with somebody for an ounce, a pound, a kilo, 100 kilos, a million kilos of a substance and, of course, if the defendant bites at the bait, then that amount chosen by the drug agent will determine his drug sentence."[20] That is exactly what happened here.

¶ 9 The Tenth Circuit is the only jurisdiction which does not define "sentencing entrapment" as State entrapment of a defendant, predisposed to a lesser crime, into committing a greater offense. In 1992, in *United States v. Mosley*,[21] the Tenth Circuit considered the defense of outrageous govern-

13.  *See, e.g., State v. Yip*, 987 P.2d at 1010.

14.  Government agents acting with unlimited discretion may, as they did here, create crimes. While not finding sentencing entrapment because the defendant was explicitly willing to act as courier for any amount of heroin, the Third Circuit was extremely troubled where an offense was entirely set up by the Government, with a willing defendant who had no means otherwise to carry out his plan, and where the narcotics transaction never took place. (*Raven*, 39 F.3d at 439).

15.  *United States v. Stavig*, 80 F.3d 1241, 1247 (8th Cir.1996), *quoting United States v. Staufer*,

38 F.3d 1103, 1107 (9th Cir.1994) (internal quotation omitted).

16.  *Id.*

17.  *Searcy*, 233 F.3d at 1099.

18.  *Staufer*, 38 F.3d at 1107.

19.  *Id.*

20.  *Staufer*, 38 F.3d at 1107–08.

21.  965 F.2d 906, 908 (10th Cir.1992).

ment conduct. In a thorough and well-reasoned discussion *Mosley* adopted the defense, delineated the factors necessary to prove outrageous government conduct occurred, and noted very few instances of government conduct would warrant any type of relief. The Court specifically concluded "it is not outrageous for the government to induce a defendant to repeat or continue a crime or even to induce him to expand or extend previous criminal activity." [22] *Mosley* did not consider, discuss or rule on either sentencing entrapment or sentencing manipulation.

¶ 10 In 1996, the Tenth Circuit considered a sentencing entrapment claim resulting from a reverse sting in *United States v. Lacey*.[23] Rather than join every other jurisdiction which had discussed the issue of sentencing entrapment, and treat it as a separate defense, the Court returned to *Mosley*. In a footnote the Court rejected the common consensus that sentencing entrapment focuses on a defendant's predisposition, and stated that, in the Tenth Circuit, the claim would be treated as one of outrageous conduct focusing on the actions of the government.[24] Having determined that sentencing entrapment was merely another form of a claim of outrageous government conduct, the Court applied *Mosley*, and held government conduct could not be outrageous where agents induce a defendant to expand or extend his criminal activity by making a bigger buy.[25] *Lacey* also determined that sentencing manipulation was merely another outrageous government conduct claim and, applying *Mosley*, rejected Lacey's arguments.[26]

¶ 11 The Tenth Circuit stands alone in refusing to treat sentencing manipulation and sentencing entrapment as doctrines separate from the defense of outrageous government conduct. The Court gave no reason for this decision, other than the fact that the Court already had a discussion of outrageous government conduct available in *Mosley*.[27] The weight of authority, analysis of the claims themselves, and common sense suggests there is a difference between sentencing entrapment or manipulation and outrageous government conduct. That difference has been articulated by the other jurisdictions. After carefully considering all the arguments, definitions, discussions and claims, I would adopt the sentencing entrapment doctrine as traditionally defined, and hold that sentencing entrapment occurs when official conduct leads a defendant, predisposed to commit a lesser crime, into committing a greater offense subject to greater punishment. Further, while I do not dispute the Tenth Circuit's conclusion that government conduct is not outrageous simply because agents induce a defendant to expand his activity by making a bigger buy, that is not the question for sentencing entrapment. The analysis should focus not on the agent's conduct in encouraging a defendant to engage in a larger transaction, but on the defendant's predisposition. The question becomes: did State agents induce a defendant, who was otherwise predisposed to a lesser crime, to commit a significantly greater offense leading to greater punishment?

¶ 12 In the majority of jurisdictions considering sentence entrapment, the issue is resolved by the court because most jurisdictions do not have jury sentencing. The United States Supreme Court has held that Oklahoma defendants have a liberty interest in having a jury impose sentence.[28] The Su-

---

**22.** *Mosley*, 965 F.2d at 911.

**23.** 86 F.3d 956 (10th Cir.), *cert. denied*, 519 U.S. 944, 117 S.Ct. 331, 136 L.Ed.2d 244 (1996).

**24.** *Lacey*, 86 F.3d at 963, n. 5.

**25.** *Lacey*, 86 F.3d at 965.

**26.** *Lacey*, 86 F.3d at 963.

**27.** In a more recent unpublished opinion on outrageous government conduct, a panel of the Tenth Circuit discusses evidence on a defendant's predisposition to commit a crime, cites *Lacey* to

note that proof of predisposition to the larger crime is not a part of Tenth Circuit analysis ("even were our analysis to turn on such a distinction"), but cites *Staufer* as well, suggesting that at least one panel may be factually inclined to consider predisposition. This case had no claim of sentencing entrapment or manipulation. *United States v. Sims*, 153 F.3d 729 (Table), 1998 WL 380970(10th Cir.1998).

**28.** *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980).

preme Court based this holding on Oklahoma's statute creating the right to have a jury fix punishment.[29] Although this right is not absolute,[30] the statute does grant to the defendant the right to jury sentencing in the first instance. I would hold that, after a trial court determines evidence has been presented to support a claim of sentencing entrapment, the defense shall be presented to the jury. A properly instructed jury may determine whether, under the facts of each case, sentencing entrapment applies. I would promulgate a separate instruction on sentence entrapment, rather than modify the language of the existing entrapment instruction as the majority suggests.

¶ 13 Nothing in the record suggests Leech had previously dealt in large quantities of methamphetamine. Peterman testified he had borrowed $100 to buy ingredients, and said fourteen grams (half an ounce) as payment for that debt was about right.[31] Of course, fourteen grams is not within the amount necessary for a trafficking charge. Agent Snowden testified Officer Pritchett asked him for an ounce of methamphetamine, and Officer Pritchett testified he arranged to do a "trafficking reverse" with Peterman and Leech. Peterman offered Leech half an ounce as payment for the $100, and explained he wanted Leech to take the other half ounce and sell it for him. Peterman testified he had borrowed money from Leech before to make methamphetamine, which he repaid or planned to repay in "product". Peterman also testified that Leech had both sold and given him drugs in the past. Peterman said he usually used a quarter of a gram at a time and he would buy small quantities—often a $20 "bump"—from Leech. Peterman also

provided Leech eight-balls (3 1/2 grams) of crank to sell for him four or five times.

¶ 14 All the evidence shows Leech was predisposed at most to accept and/or sell the 14 grams of methamphetamine Peterman owed him. In fact, the record shows Leech usually dealt in much smaller quantities than 14 grams, which itself is 6 grams short of the minimum quantity necessary for trafficking. Had the State not set up a "trafficking reverse," Leech would have committed the crime of possession of methamphetamine with intent to distribute.[32] The State acquired a confidential informant in Peterman, targeted Leech, asked Peterman to set up a deal, and both determined and provided the quantity of drugs used. The record amply supports Leech's contention that government agents improperly enlarged the scope of the crime Leech was prepared to commit, in order to secure a trafficking conviction. This fits squarely within the traditional scope of sentencing entrapment. Leech should have had an opportunity to present this defense to the jury for a determination of sentencing entrapment. I would reverse and remand the case for a new trial.

---

**29.** 22 O.S.2001, § 926.

**30.** 22 O.S.2001, § 927 (trial court may fix punishment where none recommended by jury); 22 O.S.2001, § 970 (granting defendant right of allocution); 22 O.S.2001, § 982a (trial court may modify a sentence by directing imposition of another penalty at any time within twelve months after the sentence is imposed); 22 O.S. 2001, § 982 (to aid in its sentencing determination, a trial court must require a presentence investigation upon conviction of certain violent felonies); 22 O.S.2001, § 973 (where the trial court hears extra evidence in the case of a plea,

or determines punishment, the trial court may schedule a hearing on evidence of aggravation or mitigation of punishment.)

**31.** Peterman testified that an ounce of methamphetamine, sold whole, was worth about $1000; a tenth of a gram was worth $20, and an eight-ball (3 1/2 grams, a common amount) was worth $250 or $300. [Trial Tr. I 130, 149, 157, 160–61] Leech's half ounce was worth as much as $2800.

**32.** 63 O.S.2001, § 2–401(B)(2).