2008 OK CR 27

**Courtney Dewayne WATTS, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2007–410.

Court of Criminal Appeals of Oklahoma.

Sept. 25, 2008.

Michael Gassaway, Oklahoma City, OK, attorney for defendant at trial.

Jimmy Harmon, Matt Dillon, Assistant District Attorneys Oklahoma City, OK, attorneys for the State at trial.

Bill J. Baze, Okla. Indigent Defense System, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General, Keeley L. Harris, Assistant Attorney Gener-

al, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

LEWIS, Judge.

¶ 1 Courtney Dewayne Watts, Appellant, was tried by jury and found guilty of Counts 1 and 4, unlawful distribution of a controlled dangerous substance (methamphetamine), in violation of 63 O.S.Supp.2003, § 2–401(A)(1); Counts 2 and 3, trafficking in illegal drugs (methamphetamine), in violation of 63 O.S.Supp.2002, § 2–415; Count 5, conspiracy to commit unlawful distribution of a controlled dangerous substance (methamphetamine), in violation of 63 O.S.2001, § 2–408; Count 6, unlawful possession of a firearm on supervised probation, in violation of 21 O.S.Supp.2002, § 1283(C); and Count 7, maintaining a dwelling where a controlled dangerous substance was kept, in violation of 63 O.S.2001, § 2–404, in the District Court of Oklahoma County, Case No. CF–2005–2162.

¶ 2 The jury found Appellant committed these crimes after a prior deferred sentence for a drug felony, *see* 63 O.S.2001, § 2–410, and sentenced as follows: in each of Counts 1 and 4, thirty (30) years imprisonment and a $40,000 fine; in each of Counts 2 and 3, fifty (50) years imprisonment and a $100,000 fine; in Count 5, twenty (20) years imprisonment and a $40,000 fine; in Count 6, ten (10) years imprisonment; and in Count 7, eight (8) years imprisonment and a $20,000 fine. The Honorable Virgil C. Black, District Judge, reduced the fines in Counts 2 and 3 to $40,000 each, but otherwise pronounced judgment and sentence in accord with the verdicts, and ordered the sentences served consecutively. Mr. Watts appeals.

¶ 3 An extended recitation of the facts is unnecessary to the issues raised on appeal. Between March 8 and October 14, 2004, Appellant, his grandfather (and co-defendant), and others not charged, participated in four sales of methamphetamine to federal undercover operatives. Each of these buys was controlled by federal agents and surreptitiously recorded. On each occasion, Appellant directed his customers to a house at 2904 S.W. 8th Street in Oklahoma City.

There, he either met with customers in person or distributed methamphetamine and received proceeds through others acting on his directions. In each instance, the undercover buyers purchased trafficking or near-trafficking quantities of methamphetamine from Appellant's operation. On the fourth and final transaction, Appellant also arranged and directed the sale of a stolen semi-automatic pistol to the informer. Although investigators hoped to continue the investigation, the informers proved unwilling and the investigation ended. Appellant was arrested in February, 2005 for another crime and subsequently charged in these counts as well. Additional facts will be stated in connection with the propositions of error before us.

¶ 4 In Proposition One, Appellant claims the District Court erred by using his deferred sentence on a prior drug conviction to enhance punishment for his convictions in this case. The record reflects Appellant entered a plea of guilty in 2003 to a charge of possession of marijuana with intent to distribute. He received a deferred sentence with five (5) years supervised probation, assorted court costs, and fines. Defense counsel objected at trial to the use of this guilty plea and deferred sentence to enhance his punishment, and thus preserved his claim that the deferred sentence on his prior drug case is not a "conviction."

¶ 5 The argument itself is without merit. Title 63 O.S.2001, § 2–410 provides a sentencing deferment procedure for first time drug offenders:

Whenever any person who has not previously been convicted of any offense under this act ... the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as it may require ... Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed

a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. Discharge and dismissal under this section may occur only once with respect to any person.

Any expunged arrest or conviction shall not thereafter be regarded as an arrest or conviction *for purposes of employment, civil rights, or any statute, regulation, license, questionnaire or any other public or private purpose; provided, that, any such plea of guilty or finding of guilt shall constitute a conviction of the offense for the purpose of this act or any other criminal statute under which the existence of a prior conviction is relevant.* (emphasis added).

¶ 6 Under section 2–410, the felony statutes under which Appellant was convicted in this case are laws "under which the existence of a prior conviction is relevant" at sentencing.[1] We examined this statute recently in *Platt v. State,* 2008 OK CR 20, 188 P.3d 196, and held that *within the period of a defendant's sentencing deferral* for a drug crime, the plea of guilty or finding of guilt entered in the prior case is a "conviction" for purposes of any subsequent crime for which a prior conviction is relevant. *Id.* at ¶ 10, 188 P.3d at 199. Appellant had not completed his deferred sentence for drug possession when he committed these felonies in 2004. His guilty plea in that prior case is a "conviction" according to the language of section 2–410, and thus available to enhance punishment for these crimes.

■ ¶ 7 The jury was properly instructed on the ranges of punishment and its authority to enhance punishment based on Appellant's prior conviction, except in one instance. The District Court erred in its sentencing instruction for Appellant's crime in Count 7 of maintaining a dwelling where controlled dangerous drugs are kept, after former conviction. The Court instructed the jury that the enhanced sentencing range was no more than ten (10) years imprisonment, based on 21 O.S.Supp.2002, § 51.1(A)(3), which provides that crimes punishable for a first offense by "five (5) years, or any less term," are punishable after former conviction by a term not exceeding ten (10) years. However, the maintaining a dwelling statute, 63 O.S. 2001, § 2–404 provides the crime is "punishable by imprisonment for not more than five years" and a fine not to exceed $10,000, and thus has *no minimum term.* The enhancement statute for such crimes is 21 O.S.Supp. 2002, § 51.1(A)(2), providing that if a subsequent felony offense "does not carry a minimum sentence as a first time offender, such person is punishable by imprisonment in the State Penitentiary for a term in the range of two (2) years to life imprisonment." Where a sentence is infirm due to instructional error on punishment, this Court may modify within the range of punishment, modify to the minimum punishment allowable by law, or remand to the trial court for re-sentencing. *Scott v. State,* 1991 OK CR 31, ¶ 14, 808 P.2d 73, 77. We find the proper remedy here is to modify Appellant's sentence in Count 7 to five (5) years imprisonment.

■ ¶ 8 Appellant's Proposition Two argues for the first time on appeal that the District Court should have instructed the jury he would be ineligible for institutional earned credits to reduce his sentence for trafficking in illegal drugs. 63 O.S.Supp. 2003, § 2–415(D) (punishment for trafficking in illegal drugs "shall not be subject to statutory provisions for suspension, deferral, or probation, or state correctional institution earned credits"). Appellant sees this statutory denial of "good time credits" on a par with the "85% Rule" of 21 O.S.Supp.2003, § 13.1, warranting an extension of *Anderson v. State,* 2006 OK CR 6, 130 P.3d 273, and a corresponding instruction to the sentencing jury.

¶ 9 Appellant waived review of the issue by failing to object or request such an instruction at trial, and we review only for plain

---

1. 63 O.S.Supp.2003, § 2–401(D)(1) provides that a second or subsequent violation of the statute is punishable under the habitual offender statute, 21 O.S.Supp.2003, § 51.1, amounting to twice the minimum at least, or a range of four (4) years imprisonment to life. Section 2–401(D)(3) provides that second or subsequent violations of the statute are not subject to deferred or suspended sentences.

error. *Romano v. State*, 1995 OK CR 74, ¶ 80, 909 P.2d 92, 120. We find Anderson is distinguishable. While an instruction on the 85% Rule "does not require trial courts to speculate about possible future actions of the executive branch," *Anderson*, at ¶ 16, 130 P.3d at 279, an instruction on the defendant's ineligibility for some institutional earned credits to reduce his prison sentence would introduce highly speculative factors into jury sentencing decisions. *Anderson* held the 85% Rule "is a specific and readily understood concept of which the jury should be informed ..." but rejected the notion that such a rule would "open a floodgate of parole information" to be imparted in sentencing instructions to juries. Id. at ¶ 25, 130 P.3d at 283, *quoting Mayes v. State*, 1994 OK CR 44, ¶ 136, 887 P.2d 1288, 1318. Anderson did not break with earlier case law recognizing that trial courts ordinarily should not instruct the jury "as to the possible reduction of the sentence imposed by pardon and parole or *deductions for good behavior.*" *Kovash v. State*, 1974 OK CR 26, ¶ 12, 519 P.2d 517, 522. (emphasis added). We have twice rejected similar claims in unpublished decisions after Anderson, and now expressly do so.[2] Proposition Two is denied.

¶ 10 In Proposition Three, Appellant claims his sentence is excessive. We will not modify a sentence imposed by the jury within the statutory range unless under all the facts and circumstances of the case the sentence is "so excessive as to shock the conscience of the Court." *Freeman v. State*, 1994 OK CR 37, ¶ 38, 876 P.2d 283, 291. Appellant's cumulative sentence of 195 years imprisonment is undoubtedly harsh and amounts to a life sentence behind bars. The jury heard evidence that Appellant was the leader of a methamphetamine trafficking and gun-running business involving his grandfather and others who acted on his orders. Appellant ran this enterprise while on probation for a prior drug felony, dealing trafficking and near-trafficking quantities of methamphetamine to undercover operatives on at least four occasions over seven months. On one of those occasions, Appellant also sold a stolen semi-automatic pistol. The jury's response to this evidence is understandable. Although Appellant is young, his tragic resolve to continue life as a dangerous criminal was obvious from the evidence at trial. These sentences are not shocking to the conscience. Proposition Three is denied.

¶ 11 In Proposition Four, Appellant argues the District Court gave an erroneous instruction on the definition of "possession" in connection with the charge that Appellant possessed a firearm while on supervised probation. In Proposition Five, Appellant claims the evidence is insufficient to support his firearm possession conviction. We address these related claims together. The claim of instructional error is waived by the failure to object or request a different instruction at trial. *Romano*, supra. Appellant essentially argues that *Kinchion v. State*, 2003 OK CR 28, 81 P.3d 681, precludes a finding of joint physical possession of a firearm, and because his co-defendant physically possessed the firearm at the time of its sale, his conviction cannot stand.

¶ 12 *Kinchion* is not on point. *Kinchion* simply held that an accomplice to armed robbery is not in joint "possession" of a firearm physically possessed and controlled by another robber for purposes of a felon-in-possession charge under 21 O.S.2001, § 1283. In *Kinchion*, the single gun carried in the robbery was in the hands of another robber and thus beyond appellant's dominion and control in any sense of the word. We recognized that "constructive possession and vicarious liability do not apply in this situation." *Kinchion*, at ¶ 12, 81 P.3d at 685. However, a person may constructively possess a firearm where he exercises a power of dominion and control over it. *Pebworth v. State*, 1993 OK CR 28, ¶ 12, 855 P.2d 605, 607 (criminal possession of firearm may be constructive or actual). In *Hancock v. State*, 2007 OK CR 9, ¶ 115, 155 P.3d 796, 823, this Court held that criminal possession of a firearm may be brief, if complete, or may extend over a period of time, if uninterrupted. Possession of a firearm "is a course of con-

---

2. *Abrego v. State*, No. F–2006–232 (Okl.Cr., January 31, 2007); *Frias v. State*, No. F–2005–718

(Okl.Cr., May 24, 2007).

duct, not an act, [involving] all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." *Id., quoting United States v. Jones,* 533 F.2d 1387, 1391 (6th Cir.1976). The evidence here, in the light most favorable to the State, established beyond a reasonable doubt that Appellant asserted dominion and control over this weapon up to the time of its sale, and thus violated 21 O.S.Supp.2003, § 1283, by constructively possessing a firearm while on supervised probation. The jury instruction given at trial accurately stated the relevant principles of constructive possession, and there was no plain error. The evidence is sufficient to support Appellant's conviction. Propositions Four and Five are denied.

■■■ ¶ 13 Appellant's Proposition Six argues the District Court erred by failing to give a jury instruction on sentence entrapment. This claim is also waived by a failure to request the instruction at trial. Reviewing for plain error, we find sentence entrapment occurs only where "the State *causes* a defendant *initially predisposed* to commit a lesser crime to commit a more serious offense." *Leech v. State,* 2003 OK CR 4, ¶ 7, 66 P.3d 987, 989 (emphasis added). The evidence at trial showed that Appellant was predisposed to distribute trafficking or near-trafficking quantities of methamphetamine. Appellant "fronted" over 19 grams of methamphetamine to an undercover operative even before government agents could arrange a controlled buy. Agents did not entice Appellant "into committing a greater crime of the same general character," *id.;* he was already interested in selling relatively large amounts of drugs to people he thought were also dealing. During a controlled payment for the "fronted" amount, Appellant actually *asked* the undercover operative if he wanted another "ounce and a half" of methamphetamine, which the informer at that point declined. There is no evidence of sentencing entrapment, and no instruction on this subject was warranted. Proposition Six is without merit.

■■■ ¶ 14 Appellant in Proposition Seven challenges the sufficiency of evidence to convict him of maintaining a dwelling where controlled dangerous drugs were kept or sold. We review the evidence in the light most favorable to the State to determine whether any rational trier of fact could find the elements of the charged offense beyond a reasonable doubt. *Spuehler v. State,* 1985 OK CR 132, 709 P.2d 202. In *Meeks v. State,* 1994 OK CR 20, ¶ 7, 872 P.2d 936, 939, the Court set out a model instruction defining the elements of the offense, in relevant part, as (1) keeping or maintaining; (2) any dwelling house; (3) used for the keeping or selling of controlled dangerous substances; (4) in violation of the drug laws. We recognized in *Meeks* that the statute reaches conduct broader than ownership or tenancy, including situations where the defendant " 'kept' or 'maintained' the house by using it as a kind of brokerage house, or exchange site ... [The statute] does not require this must be the primary purpose for maintaining the dwelling; only a substantial purpose." *Id.* at ¶¶ 3–4, 872 P.2d at 938.

¶ 15 The State presented no documentary evidence to establish Appellant's ownership or rental of the dwelling, his payment of its utilities, or his performance of home maintenance there. The State presented some evidence that Appellant lived at the residence sporadically, and his grandfather and co-defendant lived there. Nonetheless, the evidence and reasonable inferences support a conclusion that Appellant used the residence as a brokerage site where he stored illegal drugs and consummated drug deals. Appellant directed his customers to the residence and conducted deals there both in person and through his surrogates. The house was fitted with multiple cameras trained on the surrounding street and monitored from inside the house. Drugs were stashed in a freezer near the back of the house and weighed out on scales in the kitchen. Appellant's repeated use of the dwelling for his drug deals, both in person and through associates acting on his directions, is legally sufficient to establish a violation of the statute under *Meeks.* Proposition Seven is denied.

■■■ ¶ 16 We also reject Appellant's claim in Proposition Eight that his conviction for maintaining a dwelling and his convictions for distribution and trafficking in connection with the dwelling result in multiple punishments for a single criminal act and multiple punishments for the same offense in violation of 21 O.S.2001, § 11, and the constitutional double jeopardy prohibitions. Okla. Const.

art. II, § 21; U.S. Const. amend. V, XIV. Our analysis of a section 11 claim focuses on the relationship between the crimes. If the crimes "truly arise out of one act," section 11 prohibits prosecution for more than one crime, absent specific legislative intent. *Davis v. State*, 1999 OK CR 48, ¶¶ 12–13, 993 P.2d 124, 126–127. Where the defendant commits a series of separate and distinct crimes, section 11 is not violated. *Ziegler v. State*, 1980 OK CR 23, 610 P.2d 251, 254. We apply the traditional test in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932) to Appellant's claims of double jeopardy, asking whether each offense requires proof of an additional fact which the other does not. *Id.*, 284 U.S. at 304, 52 S.Ct. at 180.

¶ 17 In *Howard v. State*, 1991 OK CR 76, 815 P.2d 679, appellant raised a claim that his convictions for possession of a controlled dangerous drug and maintaining a dwelling where drugs are kept violated double jeopardy. The Court ultimately held that because appellant "was convicted of this offense solely due to the presence of drugs in the room," the conviction for maintaining a dwelling failed for insufficient evidence. *Id.* at ¶ 6, 815 P.2d at 682. On the question of double jeopardy, the Court noted in *dicta* that when properly defined, the elements of maintaining a dwelling and drug possession are "distinctly different," and "create sufficient distinction between the two offenses so as not to offend the principles of double jeopardy." *Id.* at ¶ 7–8, 815 P.2d at 682. The Court found that the offense of maintaining a dwelling in violation of 63 O.S.2001, § 2–404 "contains additional essential elements which are not found in the laws against possession which, when coupled with proof of those elements, would establish a separate crime for double jeopardy purposes." *Howard*, at ¶ 8, 815 P.2d at 683.

¶ 18 We find the same can be said here of cases involving drug distribution or trafficking in connection with the use of a dwelling. In *Howard*, the Court quoted approvingly from a Georgia case, *Barnes v. State*, 255 Ga. 396, 339 S.E.2d 229 (Ga.1986),[3] which illustrated these "distinctly different" elements of the crime of maintaining a dwelling, including (1) evidence that one of the purposes of maintaining the dwelling was keeping sufficient quantities of drugs for sale or repeated use; and (2) evidence of more than a single, isolated incident of proscribed drug activity at the dwelling. These distinct elements are also embodied in the Oklahoma Uniform Jury Instruction on the elements of maintaining a dwelling.[4] We specifically noted a conviction under section 2–404 is appropriate "when there is evidence that the location in question is somehow being used for the purpose of facilitating drug usage or sales." *Howard*, at ¶ 8, 815 P.2d at 683.

¶ 19 The State presented substantial proof of both distinct elements in this case. Appel-

---

3. The Georgia Court in *Barnes* formulated three rules involving drug possession offenses with regard to its statute on maintaining a dwelling:

> First, we hold that in order to support a conviction under § 16–13–42(a)(5) for maintaining a residence or place used for keeping controlled substances, the evidence must show that one of the purposes for maintaining the structure was the keeping of the controlled substance; thus, the mere possession of limited quantities of a controlled substance within the residence or structure is insufficient to support a conviction under Section 16–13–42(a)(5). Second, we hold that in order to support a conviction under this statute for maintaining a residence or other structure or place used for selling controlled substances, the evidence must be sufficient to support a finding of more than a single, isolated instance of the proscribed activity ... Thirdly, we hold that in determining the sufficiency of the evidence in these regards, each case must be adjudged according to its own unique facts and circumstances, and there is no inflexible rule that

evidence found only on a single occasion cannot be sufficient to show a crime of a continuing nature.

*Id.*, 339 S.E.2d at 234.

4. OUJI–CR(2d) 6–12 provides in relevant part:

> A conviction of the crime of maintaining a place where controlled dangerous substances are kept requires that the activity giving rise to the charge must *be more than a single, isolated activity*. Rather, the term implies an element of some degree of habitualness.
>
> A conviction of the crime of maintaining a place where controlled dangerous substances are kept requires that a substantial purpose, and not necessarily the sole purpose, of the residence is for *the keeping or selling of controlled dangerous substances* ... in violation of the law.
>
> The *mere possession of limited quantities of a controlled dangerous substance by the person keeping or maintaining the residence for that person's personal use within that residence is*

lant stashed marketable quantities of drugs at the dwelling over an extended period. He arranged several drug deals within the dwelling, conducted in person and through others acting on his directions. When Appellant maintained this refuge for his activities, and regularly availed himself of its protection for trafficking and distributing drugs, he committed the separate offense defined in section 2–404, containing elements that his crimes for trafficking and distribution did not. Appellant's resort to the residence for his criminal purposes was an act distinct from the acts of trafficking and distribution of methamphetamine, and was therefore also separately punishable under section 11 and the Double Jeopardy Clause. Proposition Eight is denied.

¶ 20 In Proposition Nine, Appellant argues the cumulative effect of errors deprived him of a fair trial. The error in the instructions on the punishment for maintaining a dwelling requires modification of the sentence in Count 7. Appellant has shown no other significant errors on appeal, and thus no cumulative effect of errors that warrants reversal or modification. Proposition Nine is denied.

### DECISION

The Judgment and Sentence of the District Court of Oklahoma County is **MODIFIED** in Count 7 to a term of five (5) years imprisonment, and otherwise **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2008), the **MANDATE is ORDERED** issued upon the delivery and filing of this decision.

G. LUMPKIN, P.J., C. JOHNSON, V.P.J. and A. JOHNSON, J.: Concur.

CHAPEL, J.: Concurs in Part/Dissents in Part.

LUMPKIN, Presiding Judge: Concurs.

¶ 1 While I continue to adhere to the analysis expressed in my separate writings in *Platt v. State*, 2008 OK CR 20, 188 P.3d 196, and *Anderson v. State*, 2006 OK CR 6, 130 P.3d 273, I concur in the decision of the Court based on *stare decises*.

> *insufficient* to support a conviction of the crime of maintaining a place where controlled dangerous substances are kept.

CHAPEL, Judge, Concurs in Part/Dissents in Part.

¶ 1 I cannot disagree with most of the legal analysis in the majority opinion as it applies to the individual counts charged. Appellant and his co-defendant were clearly proven to be drug dealers. My problem with these kind of cases where the State is involved in "controlled buys" and the use of undercover agents is that there are no limits on the number and variety of counts that can be charged for what is essentially the same offense. Traditional double jeopardy and multiple punishment for the same offense legal analysis simply doesn't work in these cases where the State controls the number of offenses an offender may commit. These two co-defendants were big time drug dealers and were deserving of a lengthy sentence. I would therefore modify the sentences to run them all concurrent.