Dennis Gene ENGLAND, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16863.

Court of Criminal Appeals of Oklahoma.

March 8, 1972.

Terry L. Meltzer, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Dennis Gene England, hereinafter referred to as defendant, and Connie Lee Curcie, hereinafter referred to as co-defendant Curcie, were charged, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Unlawful Possession of Marijuana; his punishment was fixed at a term of not less than two (2) nor more than seven (7) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the joint trial, Officer McDonald testified that he was assigned to the narcotics squad of the Tulsa Police Department and had been working in the capacity of an undercover agent for approximately a year and a half. On the evening of December 10, 1970, he, Officer Cartner, and two other officers went to the residence at 2752 South 96th East Avenue in the City of Tulsa, having previously obtained a search warrant for the premises. They knocked on the front door and the door was opened by co-defendant Curcie. They handed her the search warrant and entered the premises. Defendant and another subject named Rake were seated in the family room. They first searched the master bedroom of the residence and in doing so removed the mattress from the bed. Finding nothing, they started to put the mattress back on the bed whereupon co-defendant Curcie entered the bedroom and said, "You might as well leave the mattress where it is. We have to tighten the bed up anyway." (Tr. 12) Because of this request, the officers became suspicious, searched a heating vent hidden by the mattress and recovered eighteen packs of green vegetation. The eighteen packs,

marked State's Exhibit One, were introduced without objection.

Defendant, co-defendant Curcie and Rake were placed under arrest and advised of their constitutional rights. Officer McDonald advised co-defendant Curcie that, "if there is any more stuff in the house you better tell me, because one bag is the same as twenty." Co-defendant Curcie replied, "there are some more—some stems in the kitchen where we manicure the stuff." (Tr. 14) Officer McDonald and co-defendant Curcie went to the kitchen and she pointed to a bag under the sink. This bag, State's Exhibit Two, was introduced without objection. The defendant and co-defendant Curcie were allowed to get their coats prior to being transported to the police station. They both went into the master bedroom, took their coats and put them on. Upon arrival at the police station, defendant was taken to the Lieutenant's office to complete the routine booking procedure. While the Lieutenant was taking down the information, Officer McDonald had the two bags in his lap. He held one of them up and said to the defendant, "What do you sell this for?" Defendant replied, "$15.00." Officer McDonald stated, "That is a little bit steep and it looks a little light." Whereupon, the defendant replied that it is "good stuff." (Tr. 16–17)

The defendant stipulated that State's Exhibits One and Two were taken to the Tulsa City-County Health Department wherein samples from each sack were analyzed chemically and microscopically and in each case the sample was determined to be from the plant cannabis savita (marijuana).

Officer Cartner's testimony did not differ substantially from the testimony of Officer McDonald.

For the defense, co-defendant Curcie testified that she had lived at the address for approximately a year and a half. On the date in question, David and Tonda Hendricks, and Jay and Angel Felming were living with her and her children. She picked up her children at school and returned home at approximately 3:30 p. m., finding the other two couples had gone. She found stems in her sink and was afraid to put them down the disposal, so she put them in a bag and placed them in the garbage. Defendant arrived at about 8:30 p. m. and Rake about fifteen (15) minutes before the police arrived. She further testified that Jay and Angel were the last persons using the bedroom in which the marijuana was found. She denied telling the officer that "we had manicured the stems." She denied using marijuana or drugs and testified that she would not know marijuana if she saw it. Upon cross-examination, she testified that Officer McDonald had been in her home on three previous occasions saying that he had warrants for people she didn't know and had never heard of. She denied having conversations with Officer McDonald concerning drugs and narcotics previously. She testified that the defendant was "living in the house" and stayed in the bedroom upstairs. She denied that she and the defendant got their coats from the master bedroom prior to going to the police department. She testified that she did not know how the marijuana got in the heating vent.

The defendant did not testify nor was any further evidence offered in his behalf.

Officer McDonald was recalled in rebuttal and testified that in late February, 1970, he and an informer went to the residence attempting to buy narcotics. The co-defendant stated that "We are out of LSD and weed." The defendant was present during the conversation. The officer and informer asked the co-defendant where they could buy LSD or pot and was furnished the name of one Margo Weaver. They subsequently purchased LSD on two occasions from Mrs. Weaver. He further testified that in the latter part of August, 1970, they went to the address looking for a subject by the name of Adrian Moore, who was wanted on a federal fugitive warrant. They searched the entire house and found several persons who had previously been arrested for narcotics violations.

The first two propositions assert that the court erred in preventing the defendant from ascertaining the truth of the assertions contained in the affidavit for a search warrant, and, that the court committed reversible error in upholding the validity of the affidavit for search warrant. We need only to observe that the Record before this Court does not contain the search warrant or affidavit. The Transcript of Evidence taken at the Preliminary Hearing, which has been made a part of this Record, reflects that the copies of the warrant and affidavit were introduced into evidence, however, the same are not included in the Record. We have previously held that the burden is upon the defendant to ascertain the presence of exhibits, instruments, or other evidence, upon which he intends to rely before final submission of the Record for review. In King v. State, Okl.Cr., 456 P.2d 121, we stated:

"* * * Moreover, since the record does not reflect either the affidavit for the search warrant, or the search warrant itself, there is nothing preserved for review on appeal. In the first paragraph of the Syllabus of Winer v. State, 36 Okl. Cr. 316, 253 P. 1025, this Court held:

"'Error is not presumed, but must be made to affirmatively appear in order to avail a defendant. Where a defendant contends that a search warrant is invalid, the burden is on him to establish the facts which render it invalid.'"

We further observe that the exhibits were introduced into evidence without objection by the defendant, thus preserving nothing for review by this Court. We, therefore, find these propositions to be without merit.

The next proposition contends that the court committed reversible error in overruling defendant's demurrer to the evidence at the Preliminary Hearing and at the trial and in overruling defendant's motion to quash the information prior to trial. The defendant argues that he was "merely present at the premises from which the marijuana was confiscated, and that it was the co-defendant, and not this defendant, that actually had possession of the premises." In Riggs v. State, Okl.Cr., 486 P.2d 643, we stated:

"'Where a person is present in premises where marihuana is found, but does not have the exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge of the presence of marihuana and had control of it *unless there are additional independent factors showing his knowledge and control.*'" (Emphasis added)

We are of the opinion that the evidence in the instant case, although circumstantial, does, in fact, establish the "additional independent factors showing his knowledge and control" of the marijuana. Officer McDonald testified that he had been to the house in question as many as ten to twelve times and on each occasion observed the defendant and co-defendant Curcie. He testified that after finding the marijuana in the bedroom and advising the defendants of their constitutional rights, the co-defendant stated, "there are some more—some stems in the kitchen where we manicure the stuff." (Tr. 14) Both Officer McDonald and Officer Cartner testified that one of the bags was displayed to the defendant and he was asked, "What do you sell this for?" The defendant replied, "$15.00," whereupon the officer stated, "That is a little bit steep and it looks a little light to me." The defendant replied, "It is good stuff." We, therefore, conclude that the circumstantial evidence was sufficient to show defendant's knowledge and control of the marijuana.

The fourth proposition asserts that the trial court erred in failing to grant a mistrial following the prosecutor's remarks to the jury on the failure of the defense to present more evidence. The Record reflects that at the completion of the testimony of the co-defendant Curcie, the defense rested. The court inquired of the

prosecuting attorney if there would be any rebuttal, wherein the following transpired:

"MR. WILLIAMS: Yes, Your Honor, there will be. I would like a couple of minutes. I anticipated Mr. Meltzer would have more evidence—

"THE COURT: We will take a brief recess, with the usual admonition that you not discuss the case or reach any conclusion.

"(Jury excused for recess and the following out of the hearing of the jury)

"MR. MELTZER: At this time I would move for a mistrial based on the comment of Mr. Williams that he was anticipating more testimony on behalf of the defense. That amounts to a comment made in the hearing of the jury on the failure of the defendants on their own behalf, and is prejudicial to the defense in this case.

"THE COURT: Of course I don't believe he said anything about the defendant taking the stand.

"MR. MELTZER: That is right. In the first place he made the comment I was anticipating the defense putting on more evidence. That, Number 1, indicates in his opinion that the defendants would put on enough evidence to present a case. Consequently it impliedly amounts to a comment that one of the defendants would testify. We don't have a witness sitting in the hall.

"MR. WILLIAMS: Your Honor, in regard to the conversation in your presence between Mr. Meltzer and myself, it has left me in the dark as to how many witnesses he would call. In all honesty the statement was made—what it means I had no idea the defense was going to rest. I made no inference whatsoever as to Mr. England, and the comment was made by Mr. Meltzer that he had—perhaps facetiously—some of it could very well be true, that he had 40 people out on the 6th floor of this Courthouse, and he also led me to believe he very well was going to put on other people." (Tr. 59–61)

We are of the opinion that the comment by the prosecuting attorney was made in good faith reflecting that he would be momentarily delayed in calling his witnesses in rebuttal, rather than a comment on the failure of the defendant to take the stand. In arguing his motion for a mistrial to the court, defendant's attorney stated:

"I would like to say this, it is very obvious to me that Mr. Williams did not intend intentially to do anything [sic]—anything that would be prejudicial, but I am arguing what he did innocently and in good faith is prejudicial to us." (Tr. 62)

We, therefore, find this proposition to be without merit.

■ The final proposition contends that the trial court committed reversible error in allowing the prosecution, over objection of the defense, to introduce testimony that the defendant had been observed in the company of persons with arrest records. The Record reflects that Officer McDonald in rebuttal was asked if he ever had a conversation with either of these defendants with regard to drugs or narcotics, to which the defendant objected as follows:

"I object first of all to any testimony concerning any conversation with Dennis England because his sole purpose was to rebut any testimony Mrs. Curcie may have given yesterday." (Tr. 64)

The defendant later objected to a response given by the witness when he referred to "they" as follows:

"I object to this. He is using the term 'they' in relating the conversation. He was specifically asked if he had any conversation with Mrs. Curcie and if he did have a conversation with Mrs. Curcie, I think it would be permissible for him to relate that, but nothing else." (Tr. 66)

The trial court thereupon sustained the objection and admonished the jury to consider only the testimony regarding the conversation between Mrs. Curcie and the witness. The officer did not testify that the defendant was present at the time the various persons were arrested at the co-defendant's

residence. Although we are of the opinion that the testimony concerning the arrests at the co-defendant's residence of the known drug violators was prejudicial to the co-defendant Curcie, the prejudice does not attach to the defendant absent testimony that he was present at the time of the arrests.

In conclusion we observe the Record free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BRETT, J., concurs.

SIMMS, J., not participating.