LAMAR v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:LAMAR v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 LAMAR v. STATE
2018 OK CR 8
Case Number: F-2016-240
Decided: 03/22/2018
REUBEN JUAN LAMAR, Appellant v. THE STATE OF OKLAHOMA, Appellee.

Cite as: 2018 OK CR 8, __ __

 

O P I N I O N
HUDSON, JUDGE:
¶1 Appellant, Reuben Juan Lamar, was tried and convicted by a jury of Count 2: Robbery with a Dangerous Weapon, After Two Prior Felony Convictions, in violation of 21 O.S.2011, § 801; Count 5: Conspiracy to Commit a Felony, After Two Prior Felony Convictions, in violation of 21 O.S.2011, § 421; and Count 6: Burglary in the First Degree, After Two Prior Felony Convictions, in violation of 21 O.S.2011, § 1431, in the District Court of Oklahoma County, Case No. CF-2012-7029.[1] The jury recommended a sentence of twenty (20) years imprisonment on Count 2, four (4) years imprisonment on Count 5, and twenty (20) years imprisonment on Count 6.[2] 
¶2 At formal sentencing, the Honorable Ray C. Elliott, District Judge, sentenced Appellant in accordance with the jury's verdicts and ordered the sentences for Counts 2 and 5 to run concurrently and the sentence for Count 6 to run consecutively to the sentences on Counts 2 and 5 and consecutive to Appellant's sentences in Case Nos. CF-2009-7147, CF-2010-4451 and CF-2012-7211. Judge Elliott ordered credit for time served and also ordered post-imprisonment supervision of not less than nine (9) months, nor more than one (1) year. Lamar now appeals, raising nine propositions of error. We affirm.
BACKGROUND
¶3 On October 24, 2012, Appellant, Britnie Wiggins and Donnie Parton
[3] were driving around south Oklahoma City looking for a way to come up with some fast cash. Wiggins was particularly desperate for cash. Her rent was due and, by her own admission, she "was tired and . . . didn't want to go work." Wiggins and the others were also high on methamphetamine. To score some cash, Wiggins suggested the trio "hit a lick" meaning they "go rob somebody". After some deliberation, Parton suggested they rob his grandmother, Debbie Parton. Within five minutes, Appellant drove the trio to Debbie's[4] south Oklahoma City residence where they parked and kicked-in the front door.
¶4 Debbie lived in her home with Chase Parton, her son, and Chase's girlfriend, Chelsea Alexander. Around 11 p.m. on October 24th, Debbie was falling asleep on the couch in the den when she heard three loud bangs followed by the appearance in her home of a man wearing sunglasses and several bandanas covering his neck and face. This man walked to the back of the house towards Chase's bedroom. When Debbie got up to investigate, she found her front door kicked in. She also discovered two other intruders--Appellant and Wiggins--standing inside her home. Appellant had a handgun with a red laser sight and was smoking a Black and Mild cigar. 
¶5 Chase was walking towards the front door when the intruders kicked it open and came inside. Wiggins forced Chase into the bathroom and unsuccessfully attempted to handcuff him. In the back bedroom, Donnie Parton told Chelsea Alexander--Chase's girlfriend--to get down on the ground. A few minutes later, Debbie, Chase and Chelsea were seated around the dining room table by their attackers and held at gunpoint by Appellant. Parton and Wiggins ransacked the entire house and stole the victims' valuables. This included two televisions, Debbie and Chelsea's purses, Debbie's jewelry, the house phone, food from the kitchen and Chase's game console. 
¶6 Appellant chatted with his hostages as their home was ransacked. Appellant sarcastically asked the victims how their day was going and mentioned he was a gang member. At one point, Appellant pointed the gun at Chase and forced him to help move a television. Appellant also forced Debbie to hand over the keys to her 93 Ford Mustang which was parked in the garage. When Debbie tried to remove her house key from the key ring, Wiggins slapped her in the ear causing it to bleed. Appellant told his captives that he wanted drugs and money; Debbie replied that they did not have any drugs or money.
¶7 After searching the house, Appellant told the victims not to call the police or he would come back and "get us". Appellant and his two accomplices then left not only with the victims' property from inside the house but also Debbie's Ford Mustang. Despite Appellant's threat, Debbie walked across the street to a neighbor's house and called 911. The police arrived soon thereafter and Debbie, Chase and Chelsea gave statements about what happened. A crime scene investigator recovered a partially smoked cigar tip found near the front door and submitted it for forensic examination. Police also found a pair of handcuffs on the dining room table. Several days later, police showed the victims a photo lineup during which Chase and Chelsea identified Appellant, who was pictured in one of the photographs, as the black robber with the gun. 
¶8 On November 1, 2012, Wiggins gave a statement to police in which she implicated herself, Appellant and Donnie Parton in the robbery at Debbie Parton's house. That same day, police executed a search warrant at a south Oklahoma City apartment Wiggins shared with Appellant. The police found inside the apartment, inter alia, a Discover credit card in Chelsea Alexander's name. Chelsea's credit card was inside the purse stolen from her during the October 24th robbery. 
¶9 Detective Eddie Dyer later obtained a search warrant authorizing the collection of Appellant's DNA using buccal swabs of the inside of Appellant's cheek. Campbell Ruddick, the DNA manager for the OCPD Forensic Laboratory, conducted DNA testing of both the cigar tip recovered from the crime scene and Appellant's known biological sample on the buccal swabs. Ruddick developed DNA profiles from both items. Ruddick's comparison of these profiles revealed that the DNA found on the cigar tip matched Appellant's known DNA profile. The probability of selecting an unrelated person at random from the population having this same genetic profile was one in 67.16 quintillion Caucasians, one in 13.9 quintillion African Americans and one in 2.3286 sextillion Southwest Hispanics. A quintillion has 21 zeroes behind it. 
I
¶10 In his first proposition of error, Appellant complains that he was denied the right to represent himself at trial. The record shows that on March 19, 2014, Appellant filed with the trial court a one-page handwritten motion requesting to proceed pro se in the case. Appellant requested six (6) months in which to prepare for trial along with production of full discovery for his case. Appellant acknowledged he would be held to the same responsibilities as counsel but believed this was the only way to "assure that there is not a miscarriage of justice of [sic] this matter." Appellant concluded his motion with a request for a hearing.
¶11 Judge Donald L. Deason was originally assigned to this case and held three separate pre-trial hearings on Appellant's motion. At the first hearing, Appellant stated that he wanted to go pro se because the appointed public defender was ineffective, "not doing his job" and "not really trying to help me, I feel." Appellant explained that defense counsel waited eighteen (18) or twenty (20) months before talking to him about the case. Appellant stated that he believed he could do a better job than counsel in handling the case. Judge Deason denied Appellant's motion after asking Appellant basic questions about trial procedure which Appellant could not answer. Appellant offered, however, that his ignorance of the law was the reason he asked for six months in which to prepare for trial. Judge Deason found that Appellant "[did not] have even the most basic knowledge to represent [himself]" and that Appellant was "in way over your head on this." A trial date was set for August 25, 2014. 
¶12 On August 22, 2014, a call docket was held during which the prosecutor expressed his understanding that Appellant was withdrawing his previous request to go pro se and instead wished to proceed to trial with his appointed counsel. When Judge Deason asked Appellant if this was correct, Appellant stated that he previously raised the issue and it had been ruled on by the Court. When asked by Judge Deason whether Appellant wished to proceed to trial with his attorney, Appellant responded "Yeah. Due to the fact that I was denied, yes." 
¶13 The prosecutor expressed his view that additional questioning was necessary to address this issue and "if he wants to proceed with his appointed attorney . . . he needs to make that without any conditions of any previous ruling." The following exchange occurred:


DEFENDANT LAMAR: I did that earlier, the first time.
THE COURT: I've addressed that earlier, and I found that though he, like anybody else, has a right to represent himself, Mr. Lamar does not have even the most basic legal knowledge that would help him get through a jury trial. He doesn't even know how to start it, what to do during a trial. With what he's looking at on these charges, I, in good conscience--And I've made my ruling on that.
So, Mr. Lamar, just a straight-up question: Do you desire to proceed with your counsel at this time.
DEFENDANT LAMAR: (No answer).
THE COURT: Yes or no?
DEFENDANT LAMAR: (No answer).
THE COURT: It's not a trick question.
DEFENDANT LAMAR: Well, I think your ruling that I was denied, and you're standing by that, then I guess I'll proceed.
THE COURT: I'd like for you to answer my question. Do you desire to proceed with your counsel, yes or no?
DEFENDANT LAMAR: I'm not going to answer that question.
THE COURT: I can't hear you.
DEFENDANT LAMAR: I'm not going to answer that question.
(8/22/2014 Tr. 5-6).
¶14 Appellant persisted in this manner despite Judge Deason urging him to reconsider and answer the question. Defense counsel stated, in response to the court's subsequent questions, that Appellant had been cooperative with him and had been participating in preparing a defense. Judge Deason stated that Appellant's refusal to answer the court's questions was yet another reason, in addition to his lack of legal knowledge, why Appellant should not be representing himself at trial. The prosecutor asked for leave to present additional research on the issue which the trial court agreed to hear and then moved on to other matters.
¶15 The prosecutor and defense counsel also engaged Appellant and attempted to get a straight answer concerning his wishes to proceed to trial pro se but to no avail; Appellant would not answer the question. Defense counsel inquired of Judge Deason whether the court would grant a continuance should Appellant choose to represent himself. This prompted the following exchange:


THE COURT: If Mr. Lamar told me clearly and unequivocally that he wants to represent himself, if I give him the appropriate warnings as to what the pit falls of that are and knowing those pitfalls and understanding that he still wished to represent himself, I would certainly entertain a motion for continuance to prepare.
DEFENDANT LAMAR: I'm pretty sure you would, now. Since this situation came up, I'm pretty sure I can. I'm pretty sure that wouldn't be a problem as of now.
[DEFENSE COUNSEL]: I don't understand your response, Mr. Lamar. Are you saying you do want to represent yourself, with that in mind, or what are you saying?
DEFENDANT LAMAR: I'm saying that if you're ready to go to trial, I'm ready to go to trial. Trial's set for Monday. There's nothing else. Your clarification is not going to be granted on my end, if that's what you're asking. Not now, not tomorrow, not ever. So whatever you guys are going to do go ahead.
(8/22/2014 Tr. 14-15).
¶16 Judge Deason stated that he would not proceed to trial with the case as scheduled unless Appellant "affirmatively state[d] on the record that he's willing to accept the assistance of counsel" and that if Appellant kept giving equivocal answers, the case would not go to trial on Monday. Appellant again refused to answer. Instead, Appellant said he was "ready for trial Monday, sir" and he "can't answer that question." 
¶17 On September 5, 2014, another hearing was held on the matter. Judge Deason began the hearing by noting he had signed an order vacating his previous order denying Appellant's motion to proceed pro se. Judge Deason told Appellant he "now . . . can represent yourself if you want, or if you're willing to accept, of your own free will, appointed counsel, then we'll be ready to proceed." When Judge Deason asked what Appellant's decision was, Appellant stated he "[s]till haven't [sic] changed. I'm not speaking." 
¶18 Judge Deason clarified for defense counsel that he considered Appellant's original motion to go pro se "to still be pending" in light of the court's latest order. Appellant refused to answer the trial court's questions, instead falling back to his familiar refrain that the motion had already been denied and he, Appellant, wasn't saying anymore. At one point, Appellant stated that the trial court's handling of the matter "will just have to be in one of my propositions, wouldn't it?" (emphasis added). Appellant then stated he was not going to say anything more. Judge Deason, in turn, granted Appellant's motion to proceed pro se. Judge Deason at that time also appointed the assigned public defender as standby counsel to "provide assistance to [Appellant] if he needs it, if he needs legal research done, and to just be in the courtroom." Judge Deason clarified that the public defender was to sit at counsel table with Appellant during the trial.
¶19 On October 3, 2014, Appellant's case was reassigned to Judge Ray Elliott after Judge Deason signed a transfer order. During an October 15, 2014, pre-trial conference, defense counsel stated that Judge Deason had recused from the case based on a motion filed by Appellant claiming Judge Deason "forced" Appellant to proceed pro se. During that hearing, Appellant told Judge Elliott that he "wished to proceed with counsel" and requested a continuance of the trial setting so he and defense counsel could "get to being on the same page." Judge Elliott granted the continuance after confirming a second time that Appellant wanted to proceed with counsel.
¶20 Judge Elliott granted defense counsel's request to set the case for pre-trial conference so counsel and Appellant "had time to discuss his cases" and to thereafter set a trial date. Judge Elliott stated he would probably end up setting the case for trial sometime in January or February 2015. Over the next seventeen (17) months, Appellant's case remained in pre-trial status. During this period, defense counsel signed and filed various pre-trial motions and pleadings on Appellant's behalf. 
¶21 On March 18, 2016, Appellant's case was called for jury trial. According to the docket entry for this hearing (there is no transcript), Appellant appeared with defense counsel and announced ready for trial. The State also announced ready for trial. Judge Elliott ordered both parties to return on March 21st at 9 a.m. to commence jury selection.
¶22 The parties returned as ordered to commence trial with both defense counsel and the prosecutor announcing ready for trial. Appellant, however, took a different approach, immediately asking to represent himself at trial under Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Appellant explained that he decided the night before to go pro se and that he wanted a continuance--"a brief time" as he put it--in order "to get all of my motions and hire my private investigator." Judge Elliott responded this was the sixth jury trial setting in the case. Judge Elliott observed too that it was "a little interesting" that Appellant, "literally the evening before the matter is set for trial in which both sides were notified that they were first up in this courtroom, that [Appellant] now has made this request of the Court."
¶23 Judge Elliot asked Appellant why he decided the night before to proceed pro se. Appellant stated the following:


THE DEFNDANT: Well, your Honor, it's been a couple of, I think, errors that have been made that haven't been addressed appropriately. And throughout the three years, this is the first time that I had a confident decisions [sic] that my attorney has been making. And at the last, I think it was in your courtroom where we addressed it, and I thought that me and [defense counsel] was on the same page, but apparently it seems otherwise.
THE COURT: All right. Anything else?
THE DEFENDANT: Not that I can think of at the time.
(Tr. I 4-5). The prosecutor told Judge Elliott that Appellant was serving a 30 year sentence in one case and a 10 year sentence in another. Defense counsel declined to add anything to the conversation. Judge Elliott then made the following ruling:


THE COURT: * * * * We can't continue matters forever because of the multiple cases that Mr. Lamar has pending and apparently is continuing to pick up new cases in the county jail during his time that he's waiting in the county jail to dispose of these matters.
And in light of the fact that he is a Department of Corrections inmate, and in light of the fact that he's waited until literally the evening before by his own statements, that being March the 20th, to decide to make this decision, it appears to the Court this is a maneuver done to delay the process.
These matters need to be resolved. [Defense counsel] is a very good lawyer, very knowledgeable lawyer. He's appeared in front of this Court numerous times through the years. I have found him continually to be prepared and have the ability to present the relevant issues that need to be presented to the Court each and every time.
So in light of the fact that this decision was made last evening and just conveyed to this Court, literally at 9:30 on the morning of trial--the matter is set for trial, coupled with the fact that [defense counsel] has announced ready for trial, the defendant's request will be denied.
I have a jury out in the hallway ready to proceed. And at some point these decisions, I believe, have to be made before 9:30 on trial morning. Otherwise, it certainly appears to be nothing more than a delaying tactic, which this Court will make the decision to move forward.
(Tr. I 6-7).
¶24 After hearing two pre-trial motions filed by defense counsel, Judge Elliott briefly returned to the issue of Appellant's request to proceed pro se. Judge Elliott asked whether Appellant was ready for trial if the motion to proceed pro se was granted. Appellant responded that he was not ready for trial and would be asking for a continuance due to his unpreparedness. In response, Judge Elliott announced that he had reconsidered his initial ruling and would allow Appellant to proceed pro se. However, there would be no continuances and "[i]f you're not ready to go today and you don't want to go pro se today, then [defense counsel] is your lawyer." Appellant then resorted to a familiar refrain, one he used previously with Judge Deason, namely, to challenge Judge Elliott's authority to reconsider his previous ruling. Judge Elliott explained that he was reconsidering his previous ruling and would grant the motion to go pro se so long as Appellant understood that "the trial is today."
¶25 Judge Elliott pressed Appellant numerous times to answer whether he wanted to proceed pro se or proceed with counsel for trial that day. Appellant responded simply that he had nothing else to say, that he "already answered that question" and that Judge Elliott had already denied the motion. Judge Elliott repeatedly instructed Appellant to stand when he addressed the Court but Appellant persisted in refusing to comply even with this request. Judge Elliott told Appellant that the trial was proceeding and that if he, Appellant, did not answer the court's question, it would be the functional equivalent of withdrawing his motion to proceed pro se. Judge Elliott then asked Appellant if he wanted to be tried in absentia in light of his failure to cooperate with the court. When Appellant refused to answer, Judge Elliott gave defense counsel an opportunity to consult with his client.
¶26 After a pause in the proceedings, defense counsel reported to Judge Elliott that he advised Appellant it was not in his best interest to be tried in abstentia and that Appellant should do his best to answer the court's questions. Defense counsel also stated that Appellant had expressed his desire to return upstairs to the lockup. The prosecutor confirmed that he also heard Appellant say "I'm ready to go upstairs." Judge Elliott stressed again that the trial was going to proceed as scheduled, that Appellant could proceed pro se or with defense counsel who was fully prepared and ready for trial. Judge Elliott again asked Appellant what he wanted to do and gave Appellant a moment to think about it. 
¶27 After a nine-and-a-half (9.5) minute pause in the proceedings, the following record ensued:


[DEFENSE COUNSEL]: Since you asked Mr. Lamar the question and I have tried to speak to Mr. Lamar and again advised him, that it's not in his best interest to have this case tried in absentia.
I tried to explain what was going on today, that you have reconsidered your motion. That at least in our legal opinion, that any error that might have been created has been corrected and that Mr. Lamar has been given the opportunity to represent himself today.
After speaking with Mr. Lamar, he's told us that he is done with the conversation. He no longer wishes to speak to us.
THE COURT: No longer wishes to speak to you, too?
[DEFENSE COUNSEL]: Right.
THE COURT: Okay. All right. Mr. Lamar, it's now been 12 minutes. I will ask you one last time, do you wish to proceed at this time pro se or proceed at this time with an attorney?
All right. He's refusing again to answer. He'll proceed with an attorney. Bring the jury in. We're going to proceed right now.
(Tr. I 20-21). At this point, the prospective jurors were summoned to the courtroom and voir dire commenced.
¶28 On appeal, Appellant complains that he had a right to proceed pro se and, in representing himself, had "the right to be prepared." Aplt. Br. at 16. Citing Coleman v. State, 1980 OK CR 75, 617 P.2d 243, Appellant says his request to proceed pro se was not untimely and thus he was entitled to a continuance to facilitate his preparation for trial. Appellant argues Judge Elliott's ruling that he would grant the motion to proceed pro se, but not grant a continuance, created a "Hobson's Choice" for him. Appellant tells us he had no real alternative but to proceed to trial with unwanted counsel. Aplt. Br. at 16-17.
¶29 A criminal defendant has an absolute constitutional right to represent himself at trial, guaranteed by the Sixth Amendment to the United States Constitution, if he elects to so do. Faretta v. California, 422 U.S. 806, 818-21, 95 S. Ct. 2525, 2532-34, 45 L. Ed. 2d 562 (1975). Because the right to the assistance of counsel is a fundamental right, a waiver of the benefits of counsel must be knowingly and intelligently made after being informed of "the dangers and disadvantages of self-representation." Faretta, 422 U.S. at 835, 95 S. Ct. at 2541. To validly waive the assistance of counsel, "a defendant must be competent to make this decision and must be clear and unequivocal in his desire to proceed pro se." Mathis v. State, 2012 OK CR 1, ¶ 7, 271 P.3d 67, 72. We review the totality of the circumstances in each case to determine whether such a waiver is valid. Id.
¶30 We have reviewed the trial court's denial of a motion to proceed pro se for abuse of discretion. See, e.g., Mathis, 2012 OK CR 1, ¶ 18, 271 P.3d at 75; Halbert v. State, 1987 OK CR 57, ¶ 4, 735 P.2d 565, 566. However, it must be observed that, under Faretta, a trial judge has no discretion to deny a valid request for self-representation. See Parker v. State, 1976 OK CR 293, ¶ 5, 556 P.2d 1298, 1300-01. Violation of the right to self-representation recognized under Faretta is structural error which can never be harmless. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 950 n.8, 79 L. Ed. 2d 122 (1984). 
¶31 The first issue here is whether Appellant made a sufficient demand to represent himself. Coleman, 1980 OK CR 75, ¶ 7, 617 P.2d at 245-46. The record shows Appellant made a clear and unequivocal request to proceed pro se on the first day of trial which Judge Elliott said he would grant. Appellant was warned of the dangers and disadvantages of self-representation, based on all the circumstances of the case. Appellant was fully aware of what he was giving up by waiving counsel, most notably, the fact that he would be proceeding to trial unprepared. Judge Elliott made the dangers of self-representation in this case abundantly clear for Appellant. Before this, Judge Deason repeatedly cautioned Appellant against the folly of self-representation. Appellant knowingly and intelligently waived counsel and elected to conduct his own defense. Mathis, 2012 OK CR 1, ¶ 15, 271 P.3d at 74. 
¶32 However, Appellant's request to represent himself at trial was connected with the additional demand that Judge Elliott grant yet another continuance so Appellant could be prepared. Was Appellant entitled to another continuance in order to facilitate his last-minute election of self-representation at trial? Appellant correctly points out that in Coleman we found a request for self-representation made before the selection of a jury to be valid and timely. Coleman, 1980 OK CR 75, ¶ 3, 617 P.2d at 245 (denial of request made just before jury selection violated the Sixth Amendment). Further, we held that "a defendant who elects to proceed pro se after dismissing his counsel, whom he considers to be ineffective, should also be provided time for preparation." Id., 1980 OK CR 75, ¶ 6, 617 P.2d at 245. However, we stressed there was nothing in Coleman to suggest the motion "was a tactic to secure delay[.]" Id. The same cannot be said for Appellant's case.
¶33 Here, the record is replete with instances demonstrating Appellant's intent to sabotage the jury trial setting with delay tactics and disruptive behavior. The mere fact Appellant announced his intention to proceed pro se on the morning of trial, after remaining silent through five previous continuances of the jury trial over a period of seventeen (17) months and a sounding docket the Friday before trial speaks volumes to the dilatory nature of Appellant's request. Appellant too provided no legitimate excuse for discharging counsel on the first day of trial beyond citing "a couple of" unspecified errors committed by counsel in the handling of the case. All this after Appellant withdrew, months earlier, his initial demand for self-representation when Judge Deason recused from the case. Appellant's on-again, off-again approach to self-representation in this case reeks of dilatory tactics designed to thwart a final resolution of this matter.
¶34 We have long held that the decision to grant or deny a motion for continuance is left to the trial court's sound discretion and will not be disturbed absent an abuse of discretion. E.g., Marshall v. State, 2010 OK CR 8, ¶ 44, 232 P.3d 467, 478. An abuse of discretion is defined as "a conclusion or judgment that is clearly against the logic and effect of the facts presented." Pullen v. State, 2016 OK CR 18, ¶ 4, 387 P.3d 922, 925. When a motion for continuance on the eve of trial is grounded on a desire to change counsel, a defendant must show valid reasons for discharge of his attorney. Otherwise, the demand for new counsel will be viewed as "an impermissible delaying tactic." Henegar v. State, 1985 OK CR 56, ¶ 3, 700 P.2d 659, 660 (quoting Boone v. State, 1982 OK CR 34, ¶ 3, 642 P.2d 270, 272), overruled on other grounds, Robinson v. State, 1987 OK CR 195, ¶¶ 6-7, 743 P.2d 1088, 1090. See Dixon v. Owens, 1993 OK CR 55, ¶¶ 10-11, 865 P.2d 1250, 1252 (a non-indigent defendant should be allowed to discharge counsel "absent a showing of undue delay, disruption of the orderly process of justice, or prejudice to himself or opposing counsel" and the court may deny the request if it is simply a delaying tactic or is untimely made).
¶35 The same principle should apply here. Appellant has shown no valid reasons for discharge of court-appointed counsel which would necessitate self-representation. "Valid reasons include demonstrable prejudice against defendant by counsel, incompetence of counsel, and conflict of interest." Henegar, 1985 OK CR 56, ¶ 3, 700 P.2d at 660. The record shows defense counsel was assigned as lead counsel on the case for at least two years and was prepared for trial. Appellant, by contrast, offered vague references to unspecified errors trial counsel supposedly made in his handling of the case and was not prepared for trial. Worse yet, Appellant offered those vague reasons just before commencement of voir dire, on the first day of trial, without any rational explanation for his delay in seeking once again to represent himself at trial. This is wholly insufficient to warrant a continuance in light of the protracted nature of the proceedings leading up to the trial, a substantial portion of which was attributable to Appellant's earlier request to proceed pro se. 
¶36 To exercise his Sixth Amendment right to conduct his own defense, Appellant was required to "knowingly and intelligently forego[ ] his right to counsel and . . . [be] able and willing to abide by rules of procedure and courtroom protocol." McKaskle, 465 U.S. at 173, 104 S. Ct. at 948 (emphasis added). That is not what happened here. Appellant became uncooperative and nonresponsive when Judge Elliott inquired whether Appellant would either engage in self-representation at trial without benefit of a continuance or proceed to trial with appointed counsel. The State correctly argues that Judge Elliott, faced with Appellant's obstinate behavior, did not abuse his discretion in effectively terminating, or foreclosing, Appellant's self-representation at that point. Johnson v. State, 1976 OK CR 292, ¶ 42, 556 P.2d 1285, 1297 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct[.]") (quoting Faretta, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46). See United States v. Garey, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc) ("It is important to remember that Faretta's discussion of the right to self-representation presupposed a cooperative defendant willing to engage in reciprocal dialogue with the court."). 
¶37 In Illinois v. Allen, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), the Supreme Court held that a "defendant can lose his right to be present at trial if, after he has been warned by the judge . . . he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id., 397 U.S. at 343, 90 S. Ct. at 1060-61. The Allen court further concluded that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." Id., 397 U.S. at 343, 90 S. Ct. at 1061. The same rationale can be extended to self-representation. 
¶38 Appellant demonstrated throughout the proceedings that he was less interested in representing himself at trial and more interested in delaying the trial setting while also preserving a Faretta claim for purposes of appeal. In so doing, Appellant engaged in the same obstructionist behavior he exhibited earlier in the case despite repeated warnings from Judge Elliott. There was good cause to believe Appellant would continue to disrupt the trial proceedings in this manner if the court permitted Appellant to represent himself. The trial court did not abuse its discretion in terminating Appellant's right to self-representation based on Appellant's pre-trial conduct. See Martinez v. Court of Appeal of California, Fourth Dist., 528 U.S. 152, 162, 120 S. Ct. 684, 691, 145 L. Ed. 2d 597 (2000) ("Even at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."). "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." Faretta, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46. All things considered, relief is denied for Proposition I. 
II
¶39 In his second proposition of error, Appellant complains that the police photo lineup shown to the victims a week after the robbery was suggestive and gave rise to a substantial likelihood of misidentification. Appellant tells us the suggestiveness of the photo line-up procedure made the in-court identification unreliable, thus violating his due process rights. 
¶40 Appellant concedes that he did not raise his Proposition II claim below, thus waiving review on appeal for all but plain error. Mitchell v. State, 1983 OK CR 25, ¶ 3, 659 P.2d 366, 368. To be entitled to relief under the plain error doctrine, Appellant must show an actual error, which is plain or obvious, and which affects his substantial rights. Baird v. State, 2017 OK CR 16, ¶ 25, 400 P.3d 875, 883; Ashton v. State, 2017 OK CR 15, ¶ 34, 400 P.3d 887, 896; Levering v. State, 2013 OK CR 19, ¶ 6, 315 P.3d 392, 395; 20 O.S.2011, § 3001.1. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Baird, 2017 OK CR 16, ¶ 25, 400 P.3d at 883; Ashton, 2017 OK CR 15, ¶ 34, 400 P.3d at 896-97; Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923 (quoting Simpson v. State, 1994 OK CR 40, ¶ 30, 876 P.2d 690, 701).
¶41 Appellant fails to show actual or obvious error. "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 565 U.S. 228, 238-39, 132 S. Ct. 716, 724, 181 L. Ed. 2d 694 (2012). The record does not show, nor does Appellant explain, how the police photo lineup was suggestive. Appellant's only argument is to repeat, in conclusory fashion, that the photo lineup was suggestive. Appellant's failure to allege how the photo lineup was suggestive, let alone unnecessarily suggestive, is fatal to the present claim. Stewart v. State, 2016 OK CR 9, ¶ 27, 372 P.3d 508, 514 (appellant has "the heavy burden of demonstrating plain error" on appeal).
¶42 Appellant further complains that the officers did not follow the police department's revised written procedures for conducting photo lineups. Nothing in the trial record, however, supports this claim. Instead, Appellant has submitted a document he says is the pertinent portion of the police operations manual supporting his argument.
[5] He asks us to expand the record with this document and to consider its contents in adjudicating this claim. Appellant cites Rule 3.11(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2016) as authority for this request. Appellant's request is DENIED. Supplementation of the record under Rule 3.11(A) is not appropriate merely to cure a defendant's failure to preserve an issue below. Day v. State, 2013 OK CR 8, ¶ 10, 303 P.3d 291, 297. Proposition II is denied.
III
¶43 In his third proposition of error, Appellant complains that Inspector Guthrie improperly bolstered the identification testimony of Chase Parton and Chelsea Alexander by confirming their respective identifications of Appellant at the photo lineup. Appellant concedes that he did not raise this objection below, thus waiving all but plain error. Appellant fails to show an actual or obvious error. The record shows Inspector Guthrie indeed did confirm Chase and Chelsea's respective identifications of Appellant at the photo lineup. Inspector Guthrie's testimony concerning their extrajudicial identification of Appellant was permissible, however, because Chase and Chelsea testified at trial and were each subject to cross-examination concerning their respective out-of-court identifications. 12 O.S.2011, §§ 2801(B)(1)(c) & 2802; Davis v. State, 2018 OK CR 7, ¶¶ 26-27, ___P.3d___ (overruling prior decisions that disallow third party testimony concerning extrajudicial identifications when the requirements of § 2801(B)(1)(c) are satisfied). Proposition III is therefore denied. 
IV
¶44 In his fourth proposition of error, Appellant contends the buccal swabs taken of his inner cheek were obtained in violation of his constitutional rights under the Fourth and Fourteenth Amendments. Appellant asserts the affidavit for the search warrant to obtain the buccal swabs contained material omissions and was deficient to establish probable cause. 
¶45 Appellant did not challenge the validity of the search warrant below. Nor did he challenge the admissibility of testimony concerning the buccal swab or the DNA evidence. Appellant has thus waived all but plain error review on appeal. Marshall v. State, 2010 OK CR 8, ¶ 47, 232 P.3d 467, 478. Appellant fails to show error. The record does not contain the search warrant or the affidavit for the search warrant cited by Appellant to support this Fourth Amendment challenge. However, Detective Eddie Dyer testified that he collected the buccal swabs pursuant to a search warrant. Based on this record, Appellant fails to demonstrate any error surrounding the search warrant process, let alone an actual or obvious error affecting his substantial rights as required to show plain error. See Tollett v. State, 2016 OK CR 15, ¶ 4, 387 P.3d 915, 916-17 (holding that an appellant must prove plain error); England v. State, 1972 OK CR 75, ¶ 9, 496 P.2d 382, 385 (finding that where a defendant contends a search warrant was invalid, the burden is on him to establish the facts which render it invalid; the claim is waived where the record does not reflect either the affidavit for search warrant or the search warrant itself). 
¶46 Appellant asks this Court to grant his motion to supplement the record under Rule 3.11(A) with the search warrant application presented to a Comanche County judge used to obtain the search warrant authorizing collection of the buccal swabs along with other documents Appellant believes will bolster his claim of a Fourth Amendment violation. See Rule 3.11 Appl., Attachments B, E.
[6] In essence, Appellant asks this Court to allow him to create the record on appeal to support this claim which he wholly failed to make below. As discussed previously, this is not the purpose of direct supplementation of the record under Rule 3.11(A). Day, 2013 OK CR 8, ¶ 10, 303 P.3d at 297. Appellant's motion to supplement with these documents under Rule 3.11(A) is DENIED. Proposition IV is denied.
V
¶47 In his fifth proposition of error, Appellant claims the trial court erred when it prevented him from impeaching: 1) Britnie Wiggins using a prior inconsistent statement she made prior to trial in an affidavit concerning Appellant's involvement in the crime; and 2) Inspector Guthrie concerning OCPD policies and procedures relating to the administration of police photo lineups. Appellant argues these errors violated his right to due process, to confrontation, and to present a defense. 
¶48 The district court struck Wiggins's testimony on cross-examination concerning her purported prior inconsistent statement in the writing she referred to in her testimony because defense counsel was unable to produce the writing as required by 12 O.S.2011, § 2613.[7] This was not an abuse of discretion. Oman v. State, 1988 OK CR 66, ¶ 10, 753 P.2d 374, 377 (standard of review). Section 2613(A) commands disclosure of the contents of the witness's prior statement to opposing counsel no later than "just prior to the cross-examination of the witness." Id. 
¶49 It is true, as Appellant asserts, that evidence rules may not be mechanistically applied to defeat the ends of justice. Coddington v. State, 2006 OK CR 34, ¶ 82, 142 P.3d 437, 458. We have acknowledged too that "a defendant has a right to present competent evidence in his own defense, and . . . rules of evidence may not arbitrarily impinge on that right." Pavatt v. State, 2007 OK CR 19, ¶ 42, 159 P.3d 272, 286. Appellant nonetheless "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973). 
¶50 In the present case, the trial court did not apply an arbitrary state procedural rule that was disproportionate to the purposes it was designed to serve. Appellant wholly fails to show that he had an overriding interest in impeaching Wiggins using an unverifiable prior statement from a witness's purported writing which counsel had never seen, which could not be produced and was first disclosed by Appellant while the witness was on the stand. We observe too that the trial court allowed defense counsel to elicit from Wiggins that she had previously written or said something inconsistent compared to her testimony at trial. Under these circumstances, Appellant was not deprived of his right to present a defense, nor was he deprived of his due process rights or his right to confrontation of witnesses, by the trial court's application of § 2613(A). Holmes v. South Carolina, 547 U.S. 319, 324-25, 126 S. Ct. 1727, 1731, 164 L. Ed. 2d 503 (2006). 
¶51 We also find no constitutional error arising from the trial court sustaining an objection when defense counsel asked Inspector Guthrie whether it was still standard procedure to show the lineup photographs to each witness collectively in a group of six. The trial court's ruling was well within the court's broad discretion to place reasonable limits on cross-examination in light of defense counsel's thorough and adequate cross-examination of Inspector Guthrie about the photo lineup. See Thrasher v. State, 2006 OK CR 15, ¶¶ 7-10, 134 P.3d 846, 849. Proposition V is denied.
VI
¶52 In his sixth proposition of error, Appellant complains that his Count 2 and Count 6 convictions violate the double jeopardy clause and the statutory proscription against multiple punishments contained in 21 O.S.2011, § 11. Appellant tells us his robbery and burglary convictions are part of a single transaction which should result in only one count. 
¶53 Appellant's convictions in this case for First Degree Burglary and Robbery with a Dangerous Weapon do not violate the double jeopardy clause or the statutory proscription against multiple punishments contained in 21 O.S.2011, § 11. These crimes are two separate and distinct offenses requiring different proof. Each crime requires proof of a fact which the other does not. There is no error, let alone, plain error. Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 2d 306 (1932); State v. Kistler, 2017 OK CR 24, ¶¶ 3-10, __P.3d__; Sanders v. State, 2015 OK CR 11, ¶ 6, 358 P.3d 280, 283; Watts v. State, 2008 OK CR 27, ¶ 16, 194 P.3d 133, 139; Davis v. State, 1999 OK CR 48, ¶¶ 10-13, 993 P.2d 124, 126-27; Taylor v. State, 1995 OK CR 10, ¶ 45, 889 P.2d 319, 339; Williams v. State, 1991 OK CR 28, ¶ 6, 807 P.2d 271, 273; Ziegler v. State, 1980 OK CR 23, ¶ 10, 610 P.2d 251, 254. Proposition VI is denied.
VII
¶54 In his seventh proposition of error, Appellant alleges various instances of prosecutorial misconduct which he says deprived him of a fair trial. Both parties have wide latitude in closing argument to argue the evidence and reasonable inferences from it. We will not grant relief for improper argument unless, viewed in the context of the whole trial, the statements rendered the trial fundamentally unfair, so that the jury's verdict is unreliable. Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); Bosse v. State, 2017 OK CR 10, ¶ 82, 400 P.3d 834, 863. Appellant timely objected to only one instance of prosecutorial misconduct now alleged, thus preserving it for appellate review. The other instances of alleged prosecutorial misconduct, however, drew no objection from Appellant thus waiving on appeal all but plain error review. Id. 
¶55 Appellant was not deprived of a fundamentally fair sentencing proceeding from either challenged comment during the prosecutor's closing argument. There is also no error arising from Appellant's claim that the prosecutor elicited improper testimony concerning the police photo lineup. This claim--which Appellant also categorizes as prosecutorial misconduct--relies upon the same non-record evidence discussed in Proposition II which we decline to consider for the same reasons here, i.e., it may not be used to supplement the record here under Rule 3.11(A). Proposition VII is denied.
VIII
¶56 In his eighth proposition of error, Appellant alleges various instances of ineffective assistance of counsel. Specifically, Appellant argues trial counsel was ineffective for failing to: 1) challenge in a pre-trial motion the police photo lineup procedures used in this case as being "unduly suggestive," see Proposition II; 2) object to Inspector Guthrie's testimony concerning the victims' identification of Appellant during the police photo lineup, see Proposition III; 3) move to suppress the DNA evidence based on the alleged Fourth Amendment violation associated with collection of the buccal swabs, see Proposition IV; and 4) object to the prosecutorial misconduct during the prosecutor's sentencing phase closing argument, see Proposition VII. 
¶57 To prevail on an ineffective assistance of counsel claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). See Harrington v. Richter, 562 U.S. 86, 104, 131 S. Ct. 770, 787-88, 178 L. Ed. 2d 624 (2011) (summarizing Strickland two-part standard). Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2017) allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to utilize available evidence which could have been made available during the course of trial. Simpson v. State, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-06. This Court reviews the application along with supporting affidavits to see if it contains sufficient evidence to show this Court by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence. Notably, this standard is less demanding than the test imposed by Strickland. Id.
¶58 In the present case, Appellant is not entitled to an evidentiary hearing for his ineffective assistance counsel claims which are based on non-record evidence because he fails to show by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence. Rule 3.11(B)(3)(b)(i), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2016). Appellant's application for evidentiary hearing on his ineffectiveness claims is DENIED. Appellant's remaining ineffectiveness claims, which are based on the existing record, also lack merit. Proposition VIII is denied.
IX
¶59 Finally, relief is denied for cumulative error. Mitchell v. State, 2016 OK CR 21, ¶ 32, 387 P.3d 934, 946 ("Where there is no error, there is no cumulative error."). Proposition IX is denied.
DECISION
¶60 The Judgment and Sentence of the district court is AFFIRMED. Appellant's Motion to Supplement Direct Appeal Record With Attached Exhibits and/or for an Evidentiary Hearing Pursuant to Rule 3.11(A) and/or Rule 3.11(B)(3)(B) is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2018), the MANDATE is ORDERED issued upon delivery and filing of this decision. 
AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE RAY C. ELLIOTT, DISTRICT JUDGE




APPEARANCES AT TRIAL
MARK McCORMICK ASSISTANT PUBLIC DEFENDER
320 ROBERT S. KERR, SUITE 611
OKLAHOMA CITY, OK 73102
COUNSEL FOR DEFENDANT

APPEARANCES ON APPEAL
GINA K. WALKER ASSISTANT PUBLIC DEFENDER
320 ROBERT S. KERR, SUITE 611
OKLAHOMA CITY, OK 73102
COUNSEL FOR APPELLANT


DAN GRIDLEY JOSH YOUNG
ASSISTANT DISTRICT ATTORNEYS
320 ROBERT S. KERR, SUITE 505 OKLAHOMA CITY, OK 73102
COUNSEL FOR THE STATE

E. SCOTT PRUITT OKLAHOMA ATTORNEY GENERAL
THEODORE M. PEEPER
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE

OPINION BY: HUDSON, J.
LUMPKIN, P.J.: CONCUR
LEWIS, V.P.J.: SPECIALLY CONCUR KUEHN, J.: CONCUR
ROWLAND, J.: RECUSE 
FOOTNOTES
[1] The Third Amended Information, filed on the eve of trial, alleged five separate counts against Lamar, i.e., Counts 2, 5, 6, 7 and 8. However, the State dismissed Counts 7 and 8--alleging separate counts of Kidnapping--on the first day of trial, prior to the commencement of voir dire. 
[2] Appellant must serve 85% of his sentences on Counts 2 and 6 before becoming eligible for parole. 21 O.S.2011, § 13.1. 
[3] Donnie Parton is occasionally referenced in the record by his nickname, "DJ" (Tr. II 35, 72). 
[4] Normally, we refer to witnesses and other relevant persons in a case by their last names. Because Debbie and her son share the same last name as one of the defendants, however, we will refer to all three victims by their first names. 
[5] Appellant has submitted this document as Attachment A to his Motion to Supplement Direct Appeal Record With Attached Exhibits and/or for an Evidentiary Hearing Pursuant to Rule 3.11(A) and/or Rule 3.11(B)(3)(B), tendered for filing on September 29, 2016. 
[6] Attachment C to Appellant's motion to supplement is the information and supporting probable cause affidavits filed in the present case. These documents are contained within the existing trial record. So too is Attachment D, the signed dismissal order filed in this case which dismissed out Counts 1 and 3. To the extent Appellant is attempting to supplement the record with these documents, his motion is DENIED as they are already part of the existing trial record. 
[7] There is no proof in this regard, by testimony or otherwise, that whatever writing was being referred to was actually an affidavit. At most, there appears to be some type of a statement previously written by the witness.




LEWIS, V.P.J., SPECIALLY CONCURRING:
¶1 Trial judges must be careful in wielding this sword of terminating a defendant's request to go pro se. I agree with the majority opinion in this case, but grave caution should be exercised when making this decision.
 
 




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 
 2018 OK CR 7, DAVIS v. STATE
Cited
Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 66, 753 P.2d 374, OMAN v. STATE
Discussed
 1991 OK CR 28, 807 P.2d 271, WILLIAMS v. STATE
Discussed
 1993 OK CR 55, 865 P.2d 1250, DIXON v. OWENS
Discussed
 1994 OK CR 40, 876 P.2d 690, SIMPSON v. STATE
Discussed
 1995 OK CR 10, 889 P.2d 319, TAYLOR v. STATE
Discussed
 2006 OK CR 15, 134 P.3d 846, THRASHER v. STATE
Discussed
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed
 2006 OK CR 34, 142 P.3d 437, CODDINGTON v. STATE
Discussed
 2007 OK CR 19, 159 P.3d 272, PAVATT v. STATE
Discussed
 2008 OK CR 27, 194 P.3d 133, WATTS v. STATE
Discussed
 2010 OK CR 6, 230 P.3d 888, SIMPSON v. STATE
Discussed
 2010 OK CR 8, 232 P.3d 467, MARSHALL v. STATE
Discussed at Length
 2012 OK CR 1, 271 P.3d 67, MATHIS v. STATE
Discussed at Length
 2013 OK CR 8, 303 P.3d 291, DAY v. STATE
Discussed at Length
 2013 OK CR 19, 315 P.3d 392, LEVERING v. STATE
Discussed
 2015 OK CR 11, 358 P.3d 280, SANDERS v. STATE
Discussed
 2016 OK CR 9, 372 P.3d 508, STEWART v. STATE
Discussed
 2016 OK CR 15, 387 P.3d 915, TOLLETT v. STATE
Discussed
 2016 OK CR 18, 387 P.3d 922, PULLEN v. STATE
Discussed
 2016 OK CR 21, 387 P.3d 934, MITCHELL v. STATE
Discussed
 2017 OK CR 10, 400 P.3d 834, BOSSE v. STATE
Discussed
 2017 OK CR 15, 400 P.3d 887, ASHTON v. STATE
Discussed at Length
 2017 OK CR 16, 400 P.3d 875, BAIRD v. STATE
Discussed at Length
 1999 OK CR 48, 993 P.2d 124, Davis v. State
Discussed
 1980 OK CR 23, 610 P.2d 251, ZIEGLER v. STATE
Discussed
 1980 OK CR 75, 617 P.2d 243, COLEMAN v. STATE
Discussed at Length
 1982 OK CR 34, 642 P.2d 270, BOONE v. STATE
Discussed
 1983 OK CR 25, 659 P.2d 366, MITCHELL v. STATE
Discussed
 1972 OK CR 75, 496 P.2d 382, ENGLAND v. STATE
Discussed
 1985 OK CR 56, 700 P.2d 659, HENEGAR v. STATE
Discussed at Length
 1987 OK CR 57, 735 P.2d 565, HALBERT v. STATE
Discussed
 1987 OK CR 195, 743 P.2d 1088, ROBINSON v. STATE
Discussed
 2017 OK CR 24, STATE v. KISTLER
Cited
 1976 OK CR 292, 556 P.2d 1285, JOHNSON v. STATE
Discussed
 1976 OK CR 293, 556 P.2d 1298, PARKER v. STATE
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2613, Prior Statements of Witnesses
Cited
 12 O.S. 2801, Definitions
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
 21 O.S. 11, Specific Statutes in Other Chapters as Governing - Acts Punishable in Different Ways
Discussed
 21 O.S. 421, Conspiracy - Definition - Punishment
Cited
 21 O.S. 801, Robbery or Attempted Robbery with Dangerous Weapon or Imitation Firearm - Punishment
Cited
 21 O.S. 1431, Burglary in First Degree
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA